11 A.3d 762

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

David E. FOX.

Misc. Docket AG No. 6, Sept. Term, 2009.

Court of Appeals of Maryland.

Dec. 20, 2010.

Reconsideration Denied Feb. 17, 2011.

Gail D. Kessler, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Atty. Grievance Commission of Maryland), for petitioner.

Melvin G. Bergman, Esq., Greenbelt, Maryland, for respondent.

**510**

BARBERA, J.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary Action or Remedial Action against Respondent, attorney David E. Fox. The petition addresses Respondent's representation in two cases: an automobile accident case in which he represented Ronnie E. Miller and David A. Pearson; and an automobile accident case in which he represented Abdul M. Barrie.

Pursuant to Md. Rule 16–752, we designated the Honorable Marielsa Bernard of the Circuit Court for Montgomery County to hear the matter and make findings of fact and conclusions of law in accordance with Md. Rule 16–757. Judge Bernard conducted a hearing on September 16, 2009, and issued written findings of fact and conclusions of law on November 2, 2009. The written report concluded that Respondent violated Maryland Lawyers' Rules of Professional Conduct 1.1,[1] 1.2(a),[2] 1.3,[3] 1.4(a),[4] 1.16(d),[5] 8.1(b),[6] and 8.4(a), (c)

---

**1.** Rule 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**2.** Rule 1.2(a) provides, in relevant part:
(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

**3.** Rule 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**4.** Rule 1.4(a) provides:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

and (d).[7]

On February 8, 2010, we remanded the matter for supplemental findings of fact as to mitigation. Judge Bernard held a hearing on May 5, 2010, regarding mitigation, and issued written supplemental findings of fact and conclusions of law on May 16, 2010, finding Respondent did not prove any mitigation by a preponderance of the evidence.

---

(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

5. Rule 1.16(d) provides:
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

6. Rule 8.1(b) provides:
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 * * *
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

7. Rule 8.4, in relevant part, provides:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

In light of Judge Bernard's conclusions, Petitioner recommends that Respondent be disbarred. Respondent noted timely exceptions to Judge Bernard's initial findings of fact and conclusions of law, and to her supplemental findings of fact and conclusions of law. Respondent challenges Judge Bernard's conclusions that he violated certain rules, asserts that mitigation was sufficiently established, and urges that the proper sanction be a reprimand, or, at worst, a short-term suspension. We overrule each of Respondent's exceptions, agree with the conclusions of Judge Bernard, and hold that disbarment is the appropriate sanction for Respondent's violations of the Rules of Professional Conduct.

## I.

Judge Bernard made the following factual findings, based on clear and convincing evidence, and conclusions of law:

### I. REPRESENTATION OF RONNIE E. MILLER AND DAVID A. PEARSON

#### 1. Findings of Fact

On or about September 8, 2002, Ronnie E. Miller [hereinafter "Miller"], and David A. Pearson [hereinafter "Pearson"] retained Respondent. Miller and Pearson had been involved in an automobile accident, in which Miller was a passenger in a vehicle driven by Pearson, which was struck from behind by an automobile driven by Timiko Reed [hereinafter "Reed"].

On March 4, 2004, Respondent filed a complaint on behalf of Miller and Pearson against Reed in the Circuit Court for Prince George's County. On March 5, 2004, a Writ of Summons was issued listing Reed's address as 1433 T Street NE, Apartment #201, Washington, D.C. 20009. However, a State of Maryland Motor Vehicle Accident Report listed Reed's address as 4005 Flowerfield Road, Apartment B, Norfolk, Virginia 23518. Respondent testified at trial that he never requested or possessed a copy of the accident report. On October 18, 2004, Respondent was sent a Notification of Contemplated Dismissal for lack of

service, pursuant to Md. R. Civ. P. 2–507. On December 30, 2004, an Order of Dismissal was entered as to Reed. At no point did Respondent file a motion showing cause to defer the entry of the Order of Dismissal. Respondent testified that he never received the order of the court dismissing the case. For this reason, Respondent believes that the dismissal was faulty, and that the case is capable of being revived.

On February 24, 2006, approximately fourteen (14) months after Miller and Pearson's case was dismissed, Respondent requested a reissue of the summons for Reed. Although the case had been dismissed, the summons was reissued on March 2, 2006. Ten (10) months later, on December 21, 2006, Respondent again requested and was reissued a summons for Reed.

Pearson testified at trial that he received a copy of the Complaint in 2004 or 2005. At that time, he noticed two factual mistakes. First, Respondent had confused Miller and Pearson in the Complaint, listing Miller as the driver and Pearson as the passenger. Second, Respondent had put a District of Columbia address for Reed, and not the Norfolk, Virginia address that was listed in the accident report. Pearson testified that he had independently received a copy of the accident report. Both Pearson and Miller advised Respondent of these factual mistakes.

On January 5, 2007, Miller and Pearson received letters from Respondent enclosing a document entitled "Plaintiff's First Amended Complaint." However, no such document was ever filed with the Circuit Court for Prince George's County. Additionally, "Plaintiff's First Amended Complaint" again contained the same District of Columbia address for Reed. Pearson noticed that this new document was not "stamped" like the original complaint. Pearson made numerous calls to Respondent's office in an attempt to notify Respondent about his concerns with "Plaintiff's First Amended Complaint." However, these calls were never returned by the Respondent.

In late 2007, Pearson, who had by this time retained new counsel, learned that his case had been dismissed. Pearson testified that his new counsel attempted to contact Respondent to inquire about the status of the case, but Respondent's only reply was that he had been trying to locate Reed. Miller testified at his deposition that at various times during the representation, Respondent had told him, "he [Respondent] was waiting on the Judge to give him a court date," "there was a lot of cases and [Miller] had to wait his turn," and that "these things take time."

In early 2008, Miller learned that the case had been dismissed after he hired a new attorney to look into the matter. Respondent became evasive once Miller learned that the case had been dismissed. Miller testified that he believed that Respondent did not want to talk to him, and had his secretary "running interference." On January 30, 2008, Miller wrote to Respondent expressing his frustration with Respondent's failure to return his calls. Miller had to have someone else call Respondent's office pretending to search for legal representation, for Respondent to finally speak with Miller. During this conversation Respondent told Miller, "We've already been to court." When Miller asked Respondent for more details, Respondent told Miller that his voice was sore from being in court all day and that he could not speak with him anymore.

On February 21, 2009, Miller requested by letter that Respondent attempt to have the dismissal set aside. On April 17, 2009, Respondent wrote to Miller advising him that he could take no action to reverse the dismissal because Miller had hired a new lawyer. Respondent testified that although he believed the dismissal was improper, he was not sure he had the authority to pursue the matter once he learned of the dismissal, because new counsel had been retained by Pearson and Miller.

## 2. Conclusions of Law

The evidence in this case clearly and convincingly demonstrated that Respondent did nothing to pursue the case of his clients, Miller and Pearson, after he filed a complaint on

their behalf in March 2004. In *Attorney Grievance Commission v. Ficker,* 349 Md. 13, 41–42, 706 A.2d. [sic] 1045, 1058–59 (Md.1998), the Court of Appeals stated:

> If a pleading, paper, or notice of some kind is due to be filed or sent by another party or the court and that filing or transmission will engender some duty on the attorney's part, the attorney cannot sit blithely by in blissful ignorance, as though the case doesn't exist.... [T]he lawyer does have a duty to his or her client to remain diligent, and that duty is not discharged by placing the file in indefinite hibernation.

Here, it is clear that Respondent failed to diligently carry out the case that he had initiated for his clients. Additionally, Respondent failed to keep himself reasonably informed about the status of the case, allowing it to languish and ultimately be dismissed under Md. R. Civ. P. 2–507. Respondent testified that was [sic] unaware of this dismissal until Miller and Pearson notified him that they had discovered that the case had been dismissed. During the life of this case, Respondent continually failed to keep his clients properly informed about the status of their case, while he himself was completely uninformed that the case had been dismissed. The possibilities of reviving the case, or recovering damages for Miller and Pearson, are now seemingly lost forever as a result of Respondent's lack of attention and care to this matter.

### i. Rule 1.1—Competence

Rule 1.1 of the Maryland Lawyers' Rules of Professional Conduct requires an attorney to exercise "thoroughness in preparation reasonably necessary for the representation." Respondent demonstrated that he has ample experience with personal injury cases that are similar in nature to that of Miller and Pearson's. However, Respondent completely neglected Miller and Pearson's case after he filed a complaint on their behalf. Miller and Pearson's case was ultimately dismissed due to Respondent's lack of thoroughness and preparation. Therefore, this Court finds Respondent in violation of Rule 1.1.

### ii. Rule 1.2—Scope of Representation and Allocation of Authority Between Client and Lawyer

Rule 1.2(a) requires that "a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." Respondent generally failed to abide by the decisions of his clients, Miller and Pearson, by failing to pursue their matter after the Complaint was filed. Miller and Pearson continually requested status updates which Respondent apparently ignored. Respondent likely would have discovered the precarious status of the case had he abided by his clients' clear goal of recovering damages for their accident they were involved in. Instead, Respondent's ignorance of the case's status, combined with his refusal to provide Miller and Pearson with accurate information about their case, resulted in Respondent's violation of Rule 1.2.

### iii. Rule 1.3—Diligence

This Court finds that Respondent failed to act with reasonable diligence and promptness in his representation of Miller and Pearson. Respondent failed to diligently pursue Miller and Pearson's case against Reed. After filing the complaint in March 2004, Respondent did nothing to monitor the status of the case, which was dismissed in December 2004. Respondent was hired to help Miller and Pearson recover damages for injuries suffered in an automobile accident. Such recovery was made impossible by Respondent's abandonment of both his clients and their case. Therefore, the Court finds Respondent in violation of Rule 1.3.

### iv. Rule 1.4—Communication

Rule 1.4 states:

(a) A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent [as defined in Rule 1.0(f), is required by these Rules;] (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with

reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to a client reasonably necessary to permit the client to make informed decisions regarding the representation.

This Court finds that Respondent failed to keep Miller and Pearson reasonably informed about the status of their case, and did not promptly comply with his clients' reasonable requests for information. Respondent could not have adequately informed his clients about the status of their case, as he himself was completely oblivious to the case's dismissal. Respondent's remark to Miller that, "he [Respondent] was waiting on the Judge to give him a court date," might have been sufficient if Respondent had actually made inquiries into when the next court date in the case would be. Instead, Miller and Pearson's reasonable requests for information fell seemingly on deaf ears, as Respondent did nothing but reply with generic answers that had no basis in any actual investigation on the part of Respondent. Additionally, Respondent led Miller and Pearson to believe that he was filing an Amended Complaint by sending them copies of that document. However, no such document was ever filed with the court. Once it was discovered that the case was dismissed, Respondent completely shut out his clients, failing to return the calls of Miller and Pearson. Miller was only able to briefly speak with Respondent, and only after Miller had someone else call Respondent's office pretending to be a potential new client. Once Miller was able to get Respondent on the phone, Respondent told Miller that the case had already been to court, and that he could not speak with him anymore because his throat was sore. This Court finds Respondent in violation of Rule 1.4 due to his failure to keep his clients reasonably informed, and his misrepresentations about the status of the case.

### v. Rule 1.16—Declining or Terminating Representation

While there was no showing that Respondent intentionally terminated his representation of Miller and Pearson, he effectively did so by abandoning them and their case. Rule 1.16(d) requires that, "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." Respondent did not adequately protect Miller and Pearson's interests, as he abandoned their case, allowing it to languish for years, while he informed Miller and Pearson that they "had to wait their turn." Miller and Pearson might have retained alternative counsel early enough to save their case if they had known that Respondent was going to take no action after filling [sic] the Complaint. However, Respondent's actions, or lack thereof, appear to have ended Miller and Pearson's ability to recover damages for their injuries. Therefore, this Court finds that Respondent violated Rule 1.16 by effectively terminating the representation of Miller and Pearson without adequately notifying them or protecting their interests.

### vi. Rule 8.4—Misconduct

Rule 8.4 states that it is "professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct .... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation." This Court finds that Respondent violated Rule 8.4 by failing to diligently and competently oversee the case of Miller and Pearson, and by keeping his clients misinformed to the extent he deprived them of the ability to pursue damages. Additionally, Respondent engaged in misrepresentation when he told Miller, "We've already been to court." In fact, Respondent had never been to court for Miller and Pearson's case. Instead, he initiated an action and then simply let it languish, while giving his clients the impression that it was in fact progressing.

## II. REPRESENTATION OF ABDUL M. BARRIE

### 1. Findings of Fact

On May 14, 2001, Abdul M. Barrie [hereinafter "Barrie] [sic], was involved in an automobile accident. The vehicle that struck Barrie was uninsured. On May 16, 2001, Barrie retained Respondent. Respondent initially pursued an uninsured motorist claim against Barrie's insurance carrier, GEICO, by filing for Medical Payments coverage benefits [PIP] and seeking a settlement on behalf of Barrie.

In January 2002, GEICO sent five (5) PIP checks to Respondent's office, for the amounts of $147.15, $147.15, $115.00, $460.00, and $1,6370.00 [sic]. On February 5, 2002, GEICO advised Respondent that Barrie had exhausted his PIP payments. On February 14, 2002, Respondent replied to GEICO asking to whom the payments were made. Thereafter, no other documents appear in Respondent's file concerning Barrie's PIP payments. The PIP checks mailed in January 2002 were never negotiated, and GEICO reissued these five (5) checks in August 2002, and then again in March 2003, October 2003, May 2004, December 2004, July 2005, February 2006, four checks were reissued in October 2006, and five checks were reissued in May 2007. On May 9, 2003, GEICO issued an uninsured motorist claim final settlement check to Respondent in the amount of $5,825.00. This check was also never negotiated. During a period of over six (6) years, a total of fifty (50) PIP and settlement checks were sent to respondent's office at 1325 18th Street N.W., Suite 103, Washington, D.C. 20036, none of which were ever negotiated.

At trial, Respondent testified about his system for tracking the status of cases; specifically PIP cases. Respondent testified that when a PIP case was awaiting payment from an insurance company, it was placed in a "hot box" in Respondent's office, which Respondent frequently checked. However, by Respondent's own admission this system broke down, and the file was misplaced. Respondent was unable to explain what happened to the fifty (50) checks that had been sent to his office, but testified that he suspected that his mail was being stolen. However, at no point did Respondent get a P.O. Box or instruct GEICO to mail the checks elsewhere.

Throughout the representation Barrie had great difficulty communicating with Respondent. Barrie testified that he went to Respondent's office many times, but was consistently told that Respondent was unavailable to meet with him. Barrie also testified that he called Respondent many times throughout the representation, and on the few occasions Barrie was able to speak with Respondent, he was told that he had to wait because cases such as his "take time." However, many of Barrie's calls to Respondent simply went unreturned.

Barrie was also never informed that his case had been settled, and never agreed to a final settlement amount. Respondent's case file contained a document entitled "Double Check for Settlement Sheet," which showed the total settlement amount of $5,825.00; the same amount of the check GEICO had mailed to Respondent. Respondent testified at trial that although he could not recall exactly when, he believed that at some point he had reached a settlement agreement with GEICO. However, Respondent never informed Barrie that his case had settled. Barrie remained unaware of the status of his case until May 2008, when he retained the services of new counsel, Andrew P. McGuire [hereinafter "McGuire"] of Regan and Associates. Barrie hired new counsel after being sued by his medical provider, Medical Support Services, Incorporated, for non-payment of the medical bills incurred as a result of the accident.

On May 22, 2008, McGuire attempted to contact Respondent about Barrie's case. However, McGuire's phone call to Respondent went unreturned. On June 26, 2008, McGuire wrote to Respondent, notifying him that he was now representing Barrie, and requesting a copy of Respondent's case file. McGuire never received a response from Respondent. McGuire wrote to the Respondent a second time on July 8, 2008, again requesting a copy of Barrie's file, to which he again received no response. In July 2002 [sic] [8], GEICO

---

8. We presume this date to be July 2008, as Barrie did not hire McGuire until March 2008.

reissued the five (5) PIP checks and the final settlement check to McGuire, who distributed the proceeds to Barrie.

On May 9, 2008, the Office of Bar Counsel requested that Respondent submit a written response to Barrie's complaint against him within ten (10) days. There was no response to this letter, and a second letter was sent to Respondent on May 23, 2008. The postal receipt shows that Respondent received this letter on May 27, 2009 [sic]. The May 23, 2008 letter requested that Respondent submit a reply to the Barrie complaint within seven (7) days. On June 11, 2008, fifteen (15) days after receiving the letter of May 23, 2008, Respondent wrote to the Office of Bar Counsel requesting a ten (10) day extension. The Office of Bar Counsel agreed to grant Respondent an extension, and requested a written response to Barrie's complaint along with a copy of the Barrie file before June 23, 2008. Respondent did not provide the Office of Bar Counsel with a response or with Barrie's file, but on June 27, 2008, sent a fax to the Office of Bar Counsel stating, "the carrier is (sua sponte) re-sending Barrie's check. Kindly permit me some time to respond as this matter is fluid."

On July 3, 2008, Bar Counsel Investigator William Ramsey [hereinafter "Ramsey"] interviewed Respondent. Ramsey testified at trial that Respondent could not explain why he did not pursue collection of the PIP and settlement checks. At the interview, Respondent did not have the Barrie file available, as had been previously requested of him. Respondent told Ramsey that the Barrie file was in storage, and that it was too hot for Respondent to get the file, because there was no air conditioning at the storage location. At the conclusion of the interview, Respondent agreed to send the Barrie file to the Office of Bar counsel immediately, and on July 8, 2008, the Office of Bar Counsel wrote to Respondent requesting that the file be sent before July 18, 2008. On July 18, 2008, Respondent advised the Office of Bar Counsel that his office had flooded, and that he needed more time to send the Barrie file. Instead of being located in storage, as initially represented by Respondent,

the file was found damaged by the flood in Respondent's office. On August 13, 2008, Respondent mailed a copy of the Barrie file to the Office of Bar Counsel.

## 2. Conclusions of Law

The evidence in this case clearly and convincingly showed that Respondent abandoned Barrie and his case by failing to follow up on whether the PIP and settlement checks that Respondent had secured for Barrie had been sent. Respondent additionally failed to stay in adequate communication with Barrie. Respondent might have been able to discover that he was not receiving the PIP and settlement checks being issued by GEICO had he been aware of Barrie's concerns about the status of his case. Instead, Respondent allowed this case to sit stagnant for a period of over six (6) years. It was not until Barrie was ultimately sued, and retained new counsel, that he was able to recover the PIP and settlement checks. Even then, Barrie's new counsel was unable to get Barrie's case file from Respondent, or any information about Barrie's case, due to Respondent's neglect of his client's best interests. Respondent additionally failed to adequately consult with Barrie about the settlement that he had reached with GEICO. Finally, Respondent was uncooperative with the Office of Bar Counsel in its investigation into this matter.

### i. Rule 1.1—Competence

Respondent demonstrated that he has ample experience with cases such as Barrie's. However, in Barrie's case, Respondent showed a complete lack of thoroughness and preparation, effectively abandoning the case for six (6) years. Respondent's methods for staying updated on Barrie's case clearly failed him and his client, showing an unacceptable degree of incompetence on the part of Respondent. Therefore, the Court finds Respondent in violation of Rule 1.1.

### ii. Rule 1.2(a)—Scope of Representation and Allocation of Authority Between Client and Lawyer

Rule 1.2(a) requires attorneys to abide by the decision of their clients regarding settlement agreements. Respondent failed to consult with Barrie about the settlement agreement he reached with GEICO. Therefore, this Court finds Respondent in violation of Rule 1.2.

### iii. Rule 1.3—Diligence

Respondent did not act with reasonable diligence and promptness in his representation of Barrie. Respondent allowed Barrie's case to languish for over six (6) years, while GEICO sent fifty (50) checks to Respondent's office. While it is not clear from the evidence what happened to those checks, it is clear that Respondent maintained a system for monitoring his active cases that was insufficient, causing Respondent to forget about Barrie's case. Respondent might have realized that Barrie's file had been lost if he had remained in communication with his client. In addition, it is clear to the Court that from the different accounts given by Respondent as to the location of the Barrie file that his system for tracking files was grossly ineffective. It appears that at some point Respondent began ignoring Barrie. Therefore, this Court finds Respondent in violation of Rule 1.3.

### iv. Rule 1.4—Communication

Respondent violated Rule 1.4 in a number of ways. Respondent did not promptly inform Barrie of decisions made in his case, when he failed to notify him about the settlement agreement with GEICO. Respondent did not inform Barrie that his consent was required for any settlement, and instead unilaterally settled with GEICO. Respondent also failed to promptly comply with reasonable requests for information from Barrie, or explain the case to Barrie in a way that would permit him to make informed decisions about the case. Respondent told Barrie that his case would "take time" despite the fact that Respondent had settled the case, and the PIP and settlement checks for Barrie were already sent to Respondent. Barrie tried to get updates about his case for years, but it was not until he was sued, and subsequently retained new counsel, that he discovered

that his case had been settled, and that GEICO had been sending PIP and settlement checks to Respondent. Therefore, this Court finds Respondent in violation of Rule 1.4.

**v. Rule 1.16—Declining or Terminating Representation**

While there was no showing that Respondent intentionally terminated his representation of Barrie, he effectively did so by abandoning Barrie and his case. Respondent took no action in Barrie's case, even though he had settled the case without Barrie's consent, and in spite of Barrie's frequent inquiries about the status of the case. At no point did Respondent communicate to Barrie that he had ceased taking any action in his case. Respondent compounded his abandonment of the case by failing to protect Barrie's interests once Barrie obtained new counsel. Respondent failed to reply to calls or written requests for Barrie's case file by Barrie's new attorney McGuire. Respondent delayed the ultimate resolution of Barrie's case by denying McGuire and Barrie essential information about Barrie's case. Therefore, this Court finds Respondent in violation of Rule 1.16.

**vi. Rule 8.1—Bar Admission and Disciplinary Matters**

Rule 8.1(b) states that an attorney shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Respondent repeatedly failed to timely respond to the Office of Bar Counsel's requests for information. Although Respondent was granted an extension of time, he requested that extension after two (2) letters were sent to him by the Office of Bar Counsel, and after the original deadline for responding had lapsed. Moreover, Respondent did not produce the Barrie file when Ramsey interviewed him—supposedly because the storage unit did not have air-conditioning and it was hot outside—even though Ramsey had requested a copy of the file ahead of time. Respondent was given a deadline of July 18, 2008, to turn over Barrie's file, but did not actually provide the Office of Bar Counsel with the file until

August 13, 2008. On July 18, 2008, Respondent informed the Office of Bar Counsel that his office had flooded, and he needed more time to turn over the file. Respondent testified at trial that it was only during the clean up of the office flood that the Barrie file was discovered. This Court finds Respondent in violation of Rule 8.1 due to Respondent's lack of cooperation with Bar Counsel's investigation.

### vii. Rule 8.4—Misconduct

Respondent violated the Maryland Lawyers' Rules of Professional Conduct due to his failure to pursue collection of Barrie's PIP and settlement checks, his failure to communicate with Barrie, and his failure to obtain Barrie's consent for the settlement. In addition, Respondent violated Rule 8.4(d), which states that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice," by failing to cooperate with the Office of Bar Counsel. Therefore, this Court finds Respondent in violation of Rule 8.4.

(Citations to exhibits omitted and some paragraph breaks added).

On remand from this Court, Judge Bernard made the following supplemental findings of fact and conclusions of law regarding mitigation:

In this case, Respondent argued that he had serious health issues during the pendency of the cases at issue in this matter, which impacted his ability to practice law. Respondent has also replaced his manual calendar and case tracking system with a computerized system, to avoid future lapses similar to those which occurred in the aforementioned cases of Ronnie Miller, David Pearson, and Abdul Barrie. Respondent also raised mail delivery problems in his office building as a possible explanation for why he did not receive any of the approximately fifty (50) PIP and settlement checks sent by GEICO to Respondent for Mr. Barrie over the course of six (6) years. Respondent also explained that his lack of full cooperation with Bar Counsel was due to an office flood which impaired Respondent's

ability to locate certain files related to this case. Finally, Respondent testified that he was remorseful, that he felt his conduct reflected adversely both upon himself and the legal profession, and that none of his violations of the Rules were intentional.

Having fully considered the evidence, the Court finds that Respondent has not demonstrated by a preponderance of the evidence that he was remorseful for his actions, or that any of his violations of the Rules and the impact those violations had on his clients was mitigated in any meaningful way. While Respondent testified that he was remorseful, his actions during the pendency of the cases of Miller, Pearson, and Barrie, demonstrate a disregard for the welfare of his clients.

In the case of Miller and Pearson, Respondent allowed the Complaint he filed in Prince George's County to be dismissed for lack of prosecution. Respondent apparently never discovered the dismissal, despite seeking a reissue of the summons fourteen (14) months after the case had been dismissed. During the pendency of the case, Respondent repeatedly ignored phone calls from Miller and Pearson, who called not only to find out about the status of their case, but to inform Respondent that the Complaint contained errors. These errors included listing a different address for the Defendant than the address that appeared on the police report. Respondent also blatantly misled Miller and Pearson, telling them that "they had already been to court," and claiming that he had written an amended complaint that was never filed. It was not until Miller retained new counsel that Miller and Pearson were informed that their case had been dismissed. Respondent stated at the hearing that he did not believe that the case had been dismissed, because the summons had been reissued, and in any event he believed that the dismissal had been improper.

Respondent had ample opportunity to attempt to take corrective action in the case he filed on behalf of Miller and Pearson. However, Respondent ignored his clients, disregarded their case and possibly foreclosed any possibility

they had at recovering damages for their injuries. It was only during his testimony at the trial in this case that Respondent actually apologized for his actions, and even then, he testified that he still did not believe he had violated any rules in his representation of Miller and Pearson. This Court finds Respondent's so-called remorse to be merely an attempt to excuse his failure to adequately represent his clients.

In the case of Mr. Barrie, Respondent made attempts to recover PIP and settlement checks after Barrie was involved in a car accident. Over the course of six (6) years, GEICO sent groups of checks intended for Barrie to Respondent's office no less than five (5) times. Approximately fifty (50) checks in total were sent to Respondent that were apparently never received. Respondent testified that Barrie's file had been misplaced as an explanation for why he did not follow up on the case. Respondent also testified that he doubted that so many checks had been sent, and further cited problems with mail being lost or stolen in his building as a possible reason why the checks had not been received. Finally, Respondent testified at trial that he regretted that it took so long for Mr. Barrie to recover the money from GEICO, which Barrie accomplished only after obtaining new counsel. Even if this Court accepted as true Respondent's explanations about lost mail, or about misplacing the Barrie file, Respondent still ignored repeated phone calls and attempted office visits from Barrie over the course of seven (7) years. These communications from a client should have placed Respondent on notice that something was wrong. Yet Respondent allowed Barrie's case to languish, making no efforts to remedy whatever issue was preventing Barrie from receiving the checks.

Respondent blames his faulty calendaring system and his health problems for abandoning his clients' cases. However, Respondent's involvement in these cases took place over a period of years. There was no evidence that Respondent's health problems affected him for such a extended period of time that he could not perform the duties required

of him in the cases of Miller, Pearson, and Barrie. Additionally, any problems Respondent had with his calendaring system should have been remedied by the repeated inquiries by his clients about the status of their cases.

Finally, this Court does not find that the flood in Respondent's office mitigated his failure to cooperate with Bar Counsel. Respondent was found to be in violation of Rule 8.1 on account of his general conduct towards the Bar Counsel investigation. Respondent repeatedly failed to supply Bar Counsel with a copy of the Barrie file when requested; once ignoring the request completely, and on another occasion telling Bar Counsel that he was still attempting to have GEICO re-issue Barrie's checks. Respondent then failed to provide the Barrie file to Bar Counsel's investigator William Ramsey as requested on the date Ramsey had scheduled to interview Respondent at his office. Respondent told Ramsey that the file was in storage, and that it was too hot to get it at that time. Finally, after the office flood, the file was located during the clean-up. The flood, however, did nothing to change the fact that Respondent did not fully and freely disclose to Bar Counsel what was requested of him, nor did it change his uncooperative attitude toward the proceedings. Respondent's interactions with Bar Counsel during the investigation demonstrated the same careless attitude that Respondent showed towards the cases of Miller, Pearson, and Barrie.

Therefore, this Court, incorporating its previous Findings of Fact and Conclusions of Law, finds that Respondent has not demonstrated mitigation beyond a preponderance of the evidence in this matter.

## II.

### A.

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations

omitted). The hearing judge is required to apply the clear and convincing standard of proof when weighing the evidence, in order to establish the facts.[9] Md. Rule 16–757(b); *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 54, 930 A.2d 328, 335 (2007). "The clear and convincing standard of proof lies somewhere between a preponderance of evidence standard, which is generally applied to civil cases, and beyond a reasonable doubt standard, which is applied to most crimes." *Siskind,* 401 Md. at 54, 930 A.2d at 335 (quotation marks and citations omitted).

"We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Attorney Grievance Comm'n v. Edib,* 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quotation marks and citation omitted). That deference is appropriate largely because the hearing judge is in a position to assess the demeanor-based credibility of a witness. *Id.* at 707, 4 A.3d at 964. "All proposed conclusions of law made by the hearing judge, however, are subject to *de novo* review by this Court." *Attorney Grievance Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 236 (2008) (citing *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004)). In other words, "the ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (quotation marks and citations omitted).

## B.

In addressing Respondent's exceptions to Judge Bernard's initial findings of fact and conclusions of law, we first cover

---

9. Md. Rule 16–757(b) provides:

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

those regarding the Miller and Pearson case, then turn to the Barrie case.

### 1. Miller and Pearson Case

■ Respondent first takes exception to Judge Bernard's conclusion that he violated Rule 1.1 (competence). Judge Bernard based that conclusion on her finding that Respondent demonstrated incompetence by neglecting Miller and Pearson's case after filing the complaint, and showing a "lack of thoroughness and preparation" that ultimately led to the case being dismissed. In excepting to that conclusion (and, implicitly, the finding on which it was based), Respondent cites his inability to effect service of process because of his receiving an incorrect address for the Defendant, and the repeated reissuing of summonses by the trial court, then concludes that while he, Respondent, "may have been careless or even neglectful, that does not rise to the level of incompetence...."

The facts do not show that, after filing the initial complaint in March 2004, Respondent made any effort, short of requesting the summons be reissued, to perfect service in order to preserve the case for Miller and Pearson. Such apathy towards the need for service to preserve the case does not begin to approach the "thoroughness ... reasonably necessary for the representation." MRPC 1.1. Accordingly, we overrule this exception.

■ Respondent's second exception is to Judge Bernard's conclusion that he violated Rule 1.2(a) (scope of representation and allocation of authority between client and lawyer) by his "ignorance of the case's status, combined with his refusal to provide Miller and Pearson with accurate information about their case," following their requests for such information. Respondent argues that he did not stray from the scope of the representation—trying to recover damages for the auto accident claim—and cites *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 745 A.2d 1037 (2000), for the proposition that Miller and Pearson's dissatisfaction with Respondent's repre-

sentation, in and of itself, is insufficient to find a violation of Rule 1.2.

Contrary to Respondent's assertion, *Briscoe* provides little assistance here. In that case, we concluded that there were insufficient facts to support finding a violation of Rule 1.2, where the hearing judge stated only that the client, after having paid his lawyer for representation in a criminal case, was "dissatisfied" with the representation. *Briscoe*, 357 Md. at 564, 745 A.2d at 1042. No further detail was given regarding the basis for the client's dissatisfaction. In the instant matter, by contrast, Judge Bernard provided extensive detail concerning the shortcomings of Respondent's representation of Miller and Pearson. Miller and Pearson hired Respondent to help them recover damages for harm suffered due to the auto accident. However, after filing the initial complaint and being unable to serve the defendant, Respondent took only *de minimis* steps—requesting the summons be reissued—towards advancing Miller and Pearson's goals. By failing to make any significant effort to recover damages for his clients, Respondent violated Rule 1.2(a). *See Attorney Grievance Comm'n v. Granger*, 374 Md. 438, 455, 823 A.2d 611, 621 (2003) (after being hired to prevent foreclosure of a client's home, attorney violated Rule 1.2(a) by taking no action to stop the foreclosure). Therefore, we overrule this exception.

■ Next, Respondent takes exception to Judge Bernard's conclusion that he violated Rule 1.3 by failing to diligently pursue, or even monitor, Miller and Pearson's case. Respondent stresses that Rule 1.3 requires only that an attorney act with *"reasonable* diligence and promptness in representing a client." MRPC 1.3 (emphasis added). In this case, he argues that his conduct was reasonable because he filed the complaint, attempted service, and was unaware of the dismissal of the case.

In *Attorney Grievance Comm'n v. Zdravkovich*, 362 Md. 1, 762 A.2d 950 (2000), we held that a lawyer violated Rule 1.3 by failing to respond to phone calls and letters from his client, and failing to provide an accounting for earned fees. Here,

not only did Respondent repeatedly fail to respond to inquiries from his clients, he also declined to take any significant steps to prosecute their case for several years after filing the complaint. Under no fair interpretation of Rule 1.3 could such inattentiveness be considered "reasonable" in this case. This exception is overruled.

Respondent's fourth exception is to Judge Bernard's conclusion that he violated Rule 1.4 (communication) by not keeping Miller and Pearson reasonably informed about the status of their case, and not promptly complying with their reasonable requests for information. Respondent points to no actual evidence that suggests Judge Bernard clearly erred in finding that Respondent became evasive when contacted by Miller or Pearson, and that, when he did reply, he provided them with inadequate or dismissive responses. Thus, we sustain Judge Bernard's factual findings, which show Respondent violated Rule 1.4 by not keeping Miller and Pearson reasonably informed, and by ignoring reasonable requests for information regarding their case. *See Attorney Grievance Comm'n v. Lee*, 393 Md. 385, 408, 903 A.2d 360, 374 (2006) (finding violation of Rule 1.4 where attorney "failed to respond promptly or meaningfully to many of [his client's] telephonic inquiries about the case[,]" did not provide written attorney work and transcripts as promised, and did not respond to the client's written requests for information). Therefore, this exception is overruled.

Respondent's fifth exception is to Judge Bernard's conclusion that he violated Rule 1.16 (declining or terminating representation) by "effectively terminating the representation of Miller and Pearson without adequately notifying them or protecting their interests." Respondent asserts that Rule 1.16 is inapplicable here because "Rule 1.16 is directed towards the lawyer's actions after the client has terminated the relationship and not the converse . . . ." Respondent's alleged violation of Rule 1.16 occurred after the effective termination of his representation of Miller and Pearson. Recently, in *Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 660–61, 984

A.2d 865, 869–70 (2009), we concluded that an attorney "in effect abandoned his representation" by failing to pursue his client's cases, thereby violating Rule 1.16(d). Similarly, in this case, Judge Bernard found that Respondent effectively abandoned Miller and Pearson's case. Once he abandoned the case, Respondent did not protect Miller and Pearson's interests because, by not notifying them of his abandonment, he prevented them from seeking new counsel to preserve and pursue their claims. Accordingly, we overrule this exception.

Respondent's last exception regarding the Miller and Pearson case challenges Judge Bernard's conclusion that he violated Rule 8.4(a) and (c) (professional misconduct). Rule 8.4(a) provides that it is professional misconduct for a lawyer to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct. . . ." Respondent suggests that if we accept Judge Bernard's conclusions regarding any of the rules discussed above, we should "subsume" the corresponding Rule 8.4(a) violation into the other violation(s). Insofar as "subsuming" Rule 8.4(a) into another violation is simply merging the violations, only under a different name, we reject this request. *See Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 177 n. 8, 821 A.2d 414, 426 n. 8 (2003) (merging of Rule 8.4(a) and a violation of the Rules of Professional Conduct is improper); *see also Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009) (when an attorney "has violated several Rules of Professional Conduct, he necessarily violated MRPC 8.4(a) as well") (quoting *Attorney Grievance Comm'n v. Gallagher*, 371 Md. 673, 710–11, 810 A.2d 996, 1018 (2002)).

Judge Bernard concluded that Respondent violated Rule 8.4(c) by his misrepresentation to Miller that, "[w]e've already been to court," despite never having actually been to court for Miller and Pearson's case. "A finding of deceit and misrepresentation in a disciplinary action must be found to be intentional, supported by clear [and] convincing evidence." *Lee*, 393 Md. at 410, 903 A.2d at 375 (citations omitted). Respondent insists that his statement was "taken out of context" and that it is "not unreasonable to view the . . .

comment as technically correct, as the Respondent reasonably believed that the case was moving forward. . . ." We are not persuaded. In no apparent way is the statement "technically correct." As found by Judge Bernard, Respondent had never been to court for the case. Notably, Respondent does not challenge the facts, as found by Judge Bernard, that he made the statement to Miller and that he had never been to court for the case. Rather, he argues that those facts are not sufficient to establish intentional misrepresentation. In his words, the statement may be "somewhat disingenuous" but is not a violation of Rule 8.4(c). However, Respondent's statement, made in 2008, unequivocally pronounced that he had been to court, thereby misrepresenting to Miller and Pearson that the case, filed in 2004, had been progressing. Thus, we agree with Judge Bernard's conclusion that Respondent violated Rule 8.4(c), and overrule this exception.

## 2. *Barrie Case*

Respondent's first exception in the Barrie case, regarding Rule 1.1 (competence), is nearly identical to his first exception in the Miller and Pearson case. He argues that his inattentiveness towards the case, which caused it to languish for approximately six years, "may have been careless or even neglectful, [but did] not rise to the level of incompetence . . . ." The facts found by Judge Bernard, and not challenged by Respondent, show that GEICO reissued the checks numerous times over the six-year period, each time mailing them to Respondent's office, but Respondent never delivered any check to Barrie. Respondent never tried to find a substitute address for GEICO to send the checks to, and he took no other affirmative steps to obtain the checks for Barrie, despite Barrie's inquiring numerous times about the status of his case. Whatever the actual reason for the failure of the checks to reach Barrie, Respondent's inaction to remedy the situation falls well short of the "thoroughness and preparation reasonably necessary for the representation." MRPC 1.1. Therefore, we overrule this exception.

■ Next, Respondent takes exception to Judge Bernard's conclusion that he violated Rule 1.16 (declining or terminating representation) by effectively terminating his representation when he abandoned the case, then not protecting Barrie's interests when he failed to respond to requests by Barrie's new counsel, McGuire, for information about the case. Respondent argues that he cooperated with McGuire. The facts, as found by Judge Bernard, suggest otherwise:

> On May 22, 2008, McGuire attempted to contact Respondent about Barrie's case. However, McGuire's phone call to Respondent went unreturned. On June 26, 2008, McGuire wrote to Respondent, notifying him that he was now representing Barrie, and requesting a copy of Respondent's case file. McGuire never received a response from Respondent. McGuire wrote to the Respondent a second time on July 8, 2008, again requesting a copy of Barrie's file, to which he again received no response.

(Citations to exhibits omitted).

Even if, as Respondent argues, he was unable to locate the Barrie file at the time, the facts show nonetheless that he completely ignored McGuire's inquiries, choosing not even to acknowledge McGuire, much less explain to him why he could not produce the file. In addition, as with Miller and Pearson, Respondent failed to inform Barrie that he had effectively abandoned the representation, thus preventing Barrie from obtaining new counsel at the earliest possible time. That delay, combined with his unresponsiveness to McGuire, sufficiently demonstrates that Respondent failed to "take steps to the extent reasonably practicable to protect a client's interests[.]" MRPC 1.16(d). Accordingly, we overrule this exception.

■ Respondent's third exception regarding the Barrie case challenges Judge Bernard's conclusion that he violated Rule 8.1(b) (bar admission and disciplinary matters) because he "repeatedly failed to timely respond to the Office of Bar Counsel's requests for information." Respondent argues that he did cooperate with Bar Counsel, but admits he "did not

promptly request extensions of time to comply with Bar Counsel's information requests."

In *Attorney Grievance Comm'n v. Kreamer*, the hearing judge found a violation of Rule 8.1, explaining:

> Respondent violated Rule 8.1 by failing to respond to Petitioner's requests seeking a response to the Client's complaint. Respondent's defense that she became paralyzed with fear when she received such requests from Bar Counsel and is unable to act is unacceptable. Respondent's assertion that illness prevented her from timely responding to the Petition herein was also unpersuasive in light of the fact that she worked on other Client matters and appeared in Court during the illness. Respondent's apology for her failure to respond in the instant case was accepted.

387 Md. 503, 519, 876 A.2d 79, 88 (2005).

> We overruled an exception to that conclusion, stating:

> Rule 8.1 notes that a lawyer, in connection with a disciplinary matter, shall not "knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority...." The August 28 letter from the Commission requested a written response within ten days. It also cited Rule 16–731(d)[1] and noted the concern about completing the investigation within the time established. Finally, the letter informed Ms. Kreamer of Rule 8.1. The September 8 letter referenced the first letter, gave Ms. Kreamer seven days to reply, and reminded Ms. Kreamer of Rule 8.1. Finally, the October 15 letter granted Ms. Kreamer's oral request for an extension and noted that her response was expected by October 29. Ms. Kreamer's eventual response to the Commission, while certainly much better than no response at all, does not excuse her repeated failures to respond in writing, as requested by the Commission several times. *See Attorney Griev. Comm'n v. Fezell*, 361 Md. 234, 249, 253, 760 A.2d 1108 (2000) (noting this Court's "long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information," and also holding that respondent's "belated

cooperation with Bar Counsel does not excuse respondent's failure to respond to the previous five letters sent by Bar Counsel"). We agree with the hearing judge that Ms. Kreamer violated Rule 8.1.

*Kreamer*, at 531, 876 A.2d at 95–96.

The facts of *Kreamer* are similar to this case. Respondent repeatedly failed to respond timely to written requests from Bar Counsel, and the requests from Bar Counsel to Respondent stressed the time-sensitive nature of the investigation by citing Md. Rule 16–731(d),[10] and MRPC 8.1. Eventually, after his numerous tardy responses and a flood in his office that apparently prohibited him from recovering the Barrie file from his office for a period of time,[11] Respondent finally sent Bar Counsel the file. As in *Kreamer*, Respondent's eventual production of the file does not excuse his prior, repeated failures to respond timely to requests by Bar Counsel. We therefore agree with Judge Bernard's conclusion that Respondent violated Rule 8.1, and we overrule this exception.

Finally, Respondent takes exception to Judge Bernard's conclusion that he violated Rule 8.4(a) and (d) (professional misconduct). First, Judge Bernard stated that Respondent

---

**10.** Md. Rule 16–731(d) provides:

(d) **Time for completing investigation.** Unless the time is extended by the Commission for good cause, Bar Counsel shall complete an investigation within 90 days after opening the file on the complaint. Upon written request by Bar Counsel establishing good cause for an extension for a specified period, the Commission may grant one or more extensions. The Commission may not grant an extension, at any one time, of more than 60 days unless it finds specific good cause for a longer extension. If an extension exceeding 60 days is granted, Bar Counsel shall provide the Commission with a status report at least every 60 days. For failure to comply with the time requirements of this section, the Commission may take any action appropriate under the circumstances, including dismissal of the complaint and termination of the investigation.

**11.** In his July 18, 2008, correspondence to Bar Counsel, Respondent described the deluge and provided photographs of its after-effects in his office. Tangentially, we are curious how Respondent, or an agent on his behalf, was able to venture into the office to take the photographs, but was unable to pick up the Barrie file.

violated Rule 8.4(a) by violating the Rules of Professional Conduct in the Barrie case. For the same reasons discussed in regard to the Miller and Pearson case, we overrule Respondent's exception here.

 Next, Judge Bernard concluded that Respondent violated Rule 8.4(d), which states it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice[.]" Judge Bernard rested that conclusion on her finding that Respondent failed to cooperate with Bar Counsel. Respondent, after citing his challenges to the allegations regarding Rule 8.1, which we addressed above, contends that "conduct that is prejudicial to the administration of justice" requires more than "mere negligence or inattention."

In *Attorney Grievance Comm'n v. Harrington,* 367 Md. 36, 48–49, 785 A.2d 1260, 1267 (2001), we adopted a hearing judge's conclusion of law that the respondent in that case violated Rule 8.4(d) "by his apparently habitual failure to assist and cooperate with a disciplinary investigation...." Similarly, the facts here show that Respondent repeatedly failed to respond in a timely manner to Bar Counsel's inquiries. Respondent did not promptly acknowledge Bar Counsel's letters, much less provide the requested information in a timely manner. Like in *Harrington,* we find sufficient facts to support Judge Bernard's conclusion that Respondent violated Rule 8.4(d). Accordingly, this exception is overruled.

## III.

Next, we address Respondent's exceptions to Judge Bernard's supplemental findings of fact and conclusions of law regarding mitigation. We have defined mitigating factors to include:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation;

physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Sweitzer,* 395 Md. 586, 599, 911 A.2d 440, 448 (2006) (quoting *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 488–89, 671 A.2d 463, 483 (1996)). Under Md. Rule 16–757(b), a "respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

Respondent, in his exceptions filed with this Court, submits his proposed findings of facts and conclusions of law. We address his proposals in order.

■ First, Respondent argues:
That the Respondent was a sole practitioner at the time he was handling the three (3) matters herein, and handled a substantial number of personal injury matters, and was experienced in motor vehicle tort claims.

As quoted above, Judge Bernard found that Respondent had experience with the types of claims he pursued on behalf of Miller, Pearson, and Barrie. In addition, as stated in *Sweitzer,* 395 Md. at 599, 911 A.2d at 448, *inexperience* in the practice of law may be a mitigating factor, so it is unclear why, or if, Respondent highlights his experience as mitigation in this matter. Accordingly, we overrule this exception.

■ Second, Respondent writes:
That during the time that the matters herein were pending, the Respondent has [sic] some serious health issues, and was hospitalized on a number of occasions, which did impact on his ability to practice law, and keep up the level of communication that some of his clients sought.

In her supplemental findings of fact, Judge Bernard discussed Respondent's self-described health problems. She found, however, "no evidence that Respondent's health problems affected him for such an extended period of time that he

could not perform the duties required of him in the cases of Miller, Pearson, and Barrie." Respondent points to no specific evidence or testimony to show that Judge Bernard clearly erred in her finding that his medical conditions did not preclude him from pursuing the cases or communicating with his clients over the several years relevant to this matter. Therefore, we overrule this exception.

 Third, Respondent asserts:

That the Respondent, who had a manual calendar and case tracking system in place at the time he was involved in the matters herein, has taken corrective actions, and now has a computerized calendar and tracking systems to keep abreast of his files, so that any case tracking and calendaring problems that had arisen previously, will not occur in the future.

 Judge Bernard found that Respondent "replaced his manual calendar and case tracking system with a computerized system, to avoid future lapses similar to those which occurred in the aforementioned cases of Ronnie Miller, David Pearson, and Abdul Barrie." So, there appears no dispute about these facts. Judge Bernard, however, limits the significance of Respondent's calendar and case tracking upgrades, by concluding that "any problems Respondent had with his calendaring system should have been remedied by the repeated inquiries by his clients about the status of their cases." We thus accept Respondent's assertion here as mitigation to the extent it shows efforts on his part to prevent future problems, but we do not consider it as mitigation for his lack of diligence and communication in the cases at issue.

Fourth, Respondent argues:

That the Respondent was having mail delivery problems for a period of time at his office, as was the entire building where his office was located.

Judge Bernard acknowledged Respondent's testimony that mail had been lost or stolen in his building. Accepting as true Respondent's alleged problems with mail delivery, the mitiga-

tion impact of such problems is minimal due to the absence of any evidence that, during the approximately six-year span in which GEICO repeatedly mailed him the PIP and settlement checks, Respondent took steps to remedy the situation, or to find an alternative means of delivering the PIP and settlement checks to Barrie. Accordingly, this exception is overruled.

Fifth, Respondent submits:

The Respondent also had an office flood which impaired his ability to locate some of the files involved in the matters herein, and impeded his speed of responding to Bar Counsel's requests for information in the matters herein.

Judge Bernard accepts that the flood occurred. She concluded, however, that it does not mitigate Respondent's "failure to cooperate with Bar Counsel." The record supports that conclusion. As described earlier, on May 9, 2008, Bar Counsel sent Respondent a letter requesting his response to Barrie's complaint within ten days. Respondent provided no response. On May 23, 2008, Bar Counsel sent a second letter requesting a response within seven days. Respondent did not contact Bar Counsel until June 11, 2008, when he requested a ten-day extension, which Bar Counsel granted, asking that a response be filed by June 23, 2008, along with a copy of Barrie's case file. Respondent did not provide timely any of the requested information, instead sending a fax to Bar Counsel on June 27, 2008, asking for additional time of unspecified duration. On July 3, 2008, Mr. Ramsey, the Bar Counsel investigator, met with Respondent, who again failed to produce the case file, but promised to send it immediately. On July 8, 2008, Bar Counsel again wrote to Respondent asking that he submit the case file by July 18, 2008. On July 18, a Friday, Respondent wrote to Bar Counsel, advising them that his office had flooded "on a Sunday." The exact date of the flood is unclear. At the September 16, 2009, hearing in front of Judge Bernard, Bar Counsel questioned Respondent during his testimony about the exact date of the flood. Respondent pointed out that the phrase "a Sunday" in his July 18, 2008, letter is ambiguous

and further testified that he did not remember the date of the flood.

Whatever the precise date of the flood may have been does not change the fact that Respondent failed to respond timely to inquiries from Bar Counsel. Respondent's suggestion that the flood "impeded his speed of responding to Bar Counsel's requests for information" is, at the least, overly broad. Even if the flood occurred early enough and was severe enough to prevent him from recovering the Barrie file, no explanation or evidence is provided to convey how it prevented him from writing or calling Bar Counsel, in response to their inquiries dating back to May 9, 2008, to request additional time. Therefore, we accept Judge Bernard's conclusion that the flood does not mitigate Respondent's failure to cooperate with Bar Counsel. This exception is overruled.

 Finally, Respondent argues:

The Respondent was remorseful for the perceived lack of communication and cooperation with the Complainants and Bar Counsel herein, and recognized that not only did that perception reflect adversely upon him as a lawyer, but importantly, that it also reflected adversely on the legal profession.

Judge Bernard did not find Respondent's remorse to be genuine. She wrote: "This Court finds Respondent's so-called remorse to be merely an attempt to excuse his failure to adequately represent his clients." Respondent counters that it "is quite difficult to be remorseful about anything until the conduct is called to your attention...." Respondent's point may be true in and of itself. Nonetheless, Miller, Pearson, and Barrie repeatedly attempted to contact Respondent to learn the status of their cases—thereby calling attention to his lack of communication—and he repeatedly refused to respond. Accordingly, Respondent's argument is unpersuasive given his willful and blissful ignorance of his misconduct.

We defer to Judge Bernard's assessment of the "demeanor-based credibility" of Respondent's testimony. *Edib*, 415 Md. at 707, 4 A.3d at 964. In addition, we find Respondent's

purported remorse to carry little mitigative weight when contrasted with his repeated assertions that he acted reasonably in both the Miller and Pearson case and the Barrie case. Respondent's remorse, it appears, "is more in the nature of damage control than of sincere remorse." *Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 597, 876 A.2d 642, 661 (2005). Accordingly, we overrule this exception.

## IV.

 Our final task is to determine the appropriate sanction in this case. In *Bleecker,* 414 Md. at 176, 994 A.2d at 945, we described the purpose of sanctions in disciplinary cases:

We evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved. *Attorney Grievance v. Gisriel,* 409 Md. 331, 385, 974 A.2d 331, 362 (2009). We have consistently iterated that the goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. *Attorney Grievance v. Goff,* 399 Md. 1, 30, 922 A.2d 554, 571 (2007). We protect the public through sanctions against offending attorneys in two ways: through deterrence of "the type of conduct which will not be tolerated," and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. *Attorney Grievance v. Siskind,* 401 Md. 41, 75, 930 A.2d 328, 347–48 (2007) (citation omitted). The public is protected when the sanction imposed is commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance v. Shryock,* 408 Md. 105, 126, 968 A.2d 593, 605 (2009). Therefore, we must consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Attorney Grievance v. Harris,* 403 Md. 142, 166–67, 939 A.2d 732, 746–47 (2008).

Respondent, arguing that his conduct was "neither egregious not intentional," recommends a reprimand, or, in the alternative, "a short term suspension." Petitioner recom-

mends disbarment, pointing to Respondent's abandonment of his clients and his refusal to cooperate with Bar Counsel.

To support disbarment, Petitioner cites several cases including *Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 800 A.2d 747 (2002), *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 795 A.2d 706 (2002), *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 793 A.2d 535 (2002), and *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 567 A.2d 112 (1989). While those cases share some similarities to this case, they all involve additional, severe violations or prior disciplinary records and thus are not ideal comparisons. *See Angst,* 369 Md. at 419–20, 800 A.2d at 756–57 (tax violation); *Dunietz,* 368 Md. at 429, 795 A.2d at 711–12 (prior disciplinary record); *Wallace,* 368 Md. at 287, 793 A.2d at 541 (charging unreasonable fees and failure to provide a refund to client); *Montgomery,* 318 Md. at 160–61, 567 A.2d at 115 (failure to provide a refund to client and prior disciplinary record).

More recent than the cases cited by Petitioner, and more factually similar to this case, is *Kwarteng,* 411 Md. 652, 984 A.2d 865, where we held that the appropriate sanction was disbarment. There, an attorney, while representing a client in both an unemployment discrimination case and a fire tort case, neglected his client's cases to the point of abandonment. *Id.* at 658, 984 A.2d at 868–69. He also failed to communicate with his client and keep him informed about the status of the cases. *Id.,* 984 A.2d at 868–69. Additionally, the attorney did not respond at all to inquiries from Bar Counsel. *Id.* at 657–58, 984 A.2d at 868. All told, we held that the attorney violated Rules of Professional Conduct 1.1, 1.3, 1.4, 1.16(d), 8.1(b) and 8.4(d).

To be sure, unlike in *Kwarteng,* Respondent eventually provided Bar Counsel with the requested information. Yet, Respondent violated all of the same rules as in *Kwarteng,* plus he violated Rule 8.4(c) by misrepresenting to Miller that "we've already been to court," when in fact Respondent had never been to court in that case. The combination of Respondent's violations—in particular, abandonment of his clients,

misrepresentation, and failure to cooperate with Bar Counsel's investigation—convinces us that Respondent is unfit to practice law in Maryland and disbarment is the appropriate sanction to protect the public.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAVID E. FOX.