19 A.3d 904

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

Gary Francis STERN.

**Misc. Docket AG No. 15, Sept. Term, 2010.**

Court of Appeals of Maryland.

May 3, 2011.

James P. Botluk, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No argument on behalf of Respondent.

Submitted to: BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

Gary F. Stern, Respondent, was admitted to the Bar of this Court on June 23, 1994. On April 16, 2010, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Stern, charging numerous violations of the Maryland Rules of Professional Conduct ("Rule"), including Rule 1.2(a) (Scope of Representation),[2]

---

1. Rule 16–751(a) provides in relevant part:
 (a) **Commencement of disciplinary or remedial action.**
 (1) Upon approval or direction of Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.2(a) provides in relevant part:
 (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the

## Rule 1.15 (Safekeeping Property),[3] Rule 1.16(d),[4] Rule 8.1(b)

representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

3. Rule 1.15 states:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607(b).

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

4. Rule 1.16(d) states:

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

(Bar Admission and Disciplinary Matters),[5] Rules 8.4(b), (c), and (d) (Misconduct),[6] Section 10–306 of the Business Occupations and Professions Article, Maryland Code (2000, 2010 Repl.Vol.),[7] Rule 16–604 (Trust Account),[8] and Rule 16–609 (Prohibited Transactions).[9]

---

**5.** Rule 8.1 states in pertinent part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

At the conclusion of the hearing, the Commission withdrew its claim of a violation of Rule 8.1(b) of the Maryland Rules of Professional Conduct.

**6.** Rule 8.4 states in relevant part:

\* \* \*

It is professional misconduct for a lawyer to:
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; . . . .

**7.** Section 10–306 of the Business Occupations and Professions Article provides:

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

**8.** Rule 16–604 states:

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

**9.** Rule 16–609 states:

According to the "Petition for Disciplinary or Remedial Action," Stern failed to pay a physical therapy provider approximately $45,000.00 in connection with his representation of nineteen clients in personal injury cases, although the requisite assignments and authorizations had been given; he also allegedly settled a personal injury claim on behalf of a client without the client's knowledge or consent. This Court referred the matter to Judge Lawrence P. Fletcher–Hill of the Circuit Court for Baltimore City for hearing, pursuant to Rule 16–757.[10]

---

(a) **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

(b) **No cash disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

(c) **Negative balance prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

**10.** Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of

On June 8, 2010, Stern was personally served with process, to which was appended the Petition filed by Bar Counsel. Stern filed an "Answer to Petition" on June 24, 2010. When Judge Fletcher–Hill held a hearing on the Petition on October 1, 2010, however, Stern neither attended nor participated, although he had been duly notified.

After an evidentiary hearing, Judge Fletcher–Hill issued Findings of Fact and Conclusions of Law in which he found, by clear and convincing evidence, that Stern's conduct constituted violations of Rules 1.2(a), 1.15(d), 8.4(c), and (d), 16–604, 16–609(c), and Section 10–306 of the Business Occupations and Professions Article.

The initial findings concerned Stern's background, as well as his arrangement with C.J.B. Therapy Centers, Inc. ("C.J.B."), whereby C.J.B., after having provided therapy services, would not bill Stern's clients directly with the expectation that Stern would pay C.J.B. from his clients' case recoveries:

1. Respondent Gary F. Stern was admitted to the bar of the Court of Appeals of Maryland on June 23, 1994.

2. Some of Mr. Stern's clients with personal injury claims received physical therapy services from C.J.B. Therapy Centers, Inc. Respondent Stern had an arrangement with C.J.B. under which C.J.B. deferred billing the clients with the expectation that C.J.B. would be paid for its services by Mr. Stern directly from personal injury recoveries received by the clients. C.J.B. had similar arrangements with other attorneys in addition to Mr. Stern.

---

Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

3. C.J.B.'s practice was to have patients with personal injury claims sign an "AUTHORIZATION AND ASSIGNMENT OF BENEFITS (LIEN) TO C.J.B. THERAPY CENTER." Samples of this form were admitted at the hearing as Petitioner's Exhibit 1. C.J.B.'s practice was to have the patient's attorney also sign the Authorization and Assignment. C.J.B. personnel initiated this process and sent the forms to the attorney for signature.

4. In the third paragraph of the Authorization and Assignment, the patient authorizes and directs insurance companies to make direct payments to C.J.B. for services rendered to the patient. That paragraph also contains the following sentence:

I also authorize and direct my attorney to make prompt payment to C.J.B. Therapy Center any sums which may be due and owing from the proceeds of any settlement, judgment or insurance payment including services or supplies heretofore supplied and those supplied to the time of settlement, judgment or insurance payment.

5. The next paragraph of the Authorization and Assignment provides, in boldface:

I, as the representing attorney, by also signing this authorization and Assignment of Benefits to C.J.B. Therapy Center agree to follow the aforementioned authorization and direction of my client to pay C.J.B. Therapy Center any sums due and owing from the proceeds of any settlement, judgment or insurance payments.

6. The following eighteen patients signed C.J.B. Authorization and Assignment forms on the dates indicated:

| | |
|---|---|
| Sean P. Turner | May 20, 2008 |
| Gary Stern* | May 20, 2008 |
| Denise Brown* | May 22, 2008 |
| Elrea Spurr* | May 22, 2008 |
| Haile Stern | undated |
| Micah Tucker | June 24, 2008 |
| Dorothy Crowder | June 23, 2008 |
| Dennis Hall | July 14, 2008 |
| Collyn Riggs | July 15, 2008 |
| Anthony Hemphill | July 24, 2008 |

| | |
|---|---|
| Johnny Moore Jr. | July 28, 2008 |
| Wesley Henderson Jr. | undated |
| Wesley Henderson III | undated |
| Clifford Johnson | undated |
| Antionette Ellis | August 23, 2008 |
| Tiffany Gordon | September 2, 2008 |
| David Blake | September 2, 2008 |
| Bryan Moore | September 2, 2008 |

Wesley Henderson III is not identified as "III" on the Authorization and Assignment, but the Court infers that additional identifying information from other C.J.B. records admitted into evidence. The only Authorization and Assignment forms that were also signed by Mr. Stern as attorney are the forms for the three patients with asterisks after their names. On all of the other forms, the line for the attorney's signature is blank. C.J.B. understood that all of these patients were represented by Mr. Stern.

7. As listed, Mr. Stern was also a patient at C.J.B. He signed his own Authorization and Assignment as both patient and attorney. Denise Brown, Elrea Spurr, and Haile Stern are all either family members of Mr. Stern or individuals who were involved in the same accident with Mr. Stern.

8. An additional patient, Darion Johnson, received services from C.J.B., but the Commission did not provide an Authorization and Assignment form signed by Darion Johnson. C.J.B. understood that Darion Johnson was represented by Mr. Stern.

Judge Fletcher–Hill found that Stern failed to remit payment to C.J.B. for services rendered to sixteen of Stern's nineteen clients, despite having received monies in connection with the clients' personal injury recoveries, referring to the testimony of Spencer Arrington, owner of C.J.B. Therapy Centers, Inc.:

9. Each of the nineteen patients identified above received services from C.J.B. in 2008. For each of the nineteen patients, C.J.B. sent an invoice or invoices directly to Mr. Stern itemizing the costs of the services provided to that patient. The total amount billed by C.J.B. for all nineteen patients is $74,605.68.

10. C.J.B. subsequently provided Mr. Stern with a summary of the balance owed for the nineteen patients. C.J.B.'s owner, Spencer Arrington, did not provide any explanation of these reduced amounts for some of the patients. Specifically, he did not testify to any partial payments made by Mr. Stern or from other sources. For all nineteen patients, the balance due shown on the summary is $44,465.59.

11. With respect to Mr. Stern and the three patients who are either his family members or individuals involved in the same accident with him, Mr. Arrington testified that he reached an agreement with Mr. Stern to reduce the total amount due for those four patients to $6,000. Mr. Arrington testified that Mr. Stern paid $3,000 pursuant to that compromise, but that Mr. Stern never paid the remaining $3,000 due.

12. With respect to the other fifteen patients, Mr. Stern never paid the amounts listed as due on the summary.

13. The total amounts billed by C.J.B. for the nineteen patients and the amounts remaining unpaid are as follows:

| Patient | Total Amount Billed | Amount Remaining Due on Summary | Amount Remaining Due Following Compromise Involving Four Patients |
|---|---|---|---|
| Sean P. Turner | $ 5,162.52 | $ 2,846.41 | |
| Gary Stern | $ 4,632.52 | $ 3,252.37 | $ 3,000.00 |
| Denise Brown | $ 4,479.91 | $ 480.72 | |
| Elrea Spurr | $ 3,361.68 | $ 1,052.61 | |
| Haile Stern | $ 4,568.14 | $ 2,834.47 | |
| Micah Tucker | $ 4,162.83 | $ 349.52 | |
| Dorothy Crowder | $ 4,310.00 | $ 2,220.00 | |
| Dennis Hall | $ 3,713.14 | $ 1,324.15 | |
| Collyn Riggs | $ 3,984.91 | $ 1,808.41 | |
| Anthony Hemphill | $ 2,711.99 | $ 2,711.99 | |
| Johnny Moore Jr. | $ 3,763.45 | $ 3,330.65 | |

| | | |
|---|---|---|
| Wesley Henderson Jr. | $ 3,891.37 | $ 1,391.37 |
| Wesley Henderson III | $ 3,904.60 | $ 1,404.60 |
| Clifford Johnson | $ 4,106.37 | $ 4,106.37 |
| Antionette Ellis | $ 2,555.53 | $ 2,555.53 |
| Tiffany Gordon | $ 2,565.53 | $ 2,565.53 |
| David Blake | $ 4,357.83 | $ 1,857.53 |
| Bryan Moore | $ 4,676.99 | $ 4,676.99 |
| Totals | $74,605.68 | $44,465.59 |

14. The Commission introduced into evidence bank records produced under subpoena and certified by a custodian of records from Bank of America N.A. to be bank statements, debits, and credits from May 2008 to May 2010 for two accounts: "Law Office of Gary F. Stern Escrow Account," account number ending in 6211, and "Law Office of Gary F. Stern General Business Account," account number ending in 7719. These bank records amount to several hundred pages. The Court has examined them carefully to identify all debit or credit items that might relate to any of the nineteen clients identified in the Commission's claims.

15. With respect to Sean P. Turner, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 9/11/08 | Gen. Bus. | deposit | USAA | 37.60 | Payment under PIP for Advance Radiology 5/12/08 |
| 9/15/08 | Escrow | deposit | USAA | 1,901.53 | Payment for Medical Services, CJB, 5/23/08–7/18/08 |
| 9/23/08 | Escrow | deposit | Travelers | 11,000.00 | |
| 9/24/08 | Escrow | check | CJB Therapy | 1,901.00 | |
| 12/1/09 | Escrow | check | Home & Marine | 11,000.00 | Sean Turner UJA8198–006 |
| 12/23/09 | Escrow | check | Sean Turner | 37.60 | X–Ray |

16. As summarized above, C.J.B. rendered invoices totaling $5,126.52 for services provided to Sean P. Turner, and

Mr. Arrington testified that $2,846.41 remains due for those services. This is consistent with, though not exactly consistent with, the payment of $1,901.00 made by Mr. Stern to C.J.B. on behalf of Mr. Turner. Mr. Stern received settlement proceeds for Mr. Turner from which the balance due to C.J.B. should have been paid. Ultimately, for the reasons stated in the findings below, Mr. Stern refunded the settlement amount for Mr. Turner to Travelers Insurance. Thus, although Mr. Stern failed to deliver funds promptly to C.J.B. on behalf of Mr. Turner, he has not retained any amount due to C.J.B. on behalf of Mr. Turner.

17. With respect to Gary F. Stern, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 5/29/08 | Gen. Bus. | deposit | State Farm | 1,574.71 | Claim No. 20–6390–736; Insured Jacks, Tayron |
| 6/19/08 | Gen. Bus. | deposit | MAIF | 1,125.62 | Claim No. T936712; Insured Gary Francis Stern |
| 6/30/08 | Gen. Bus. | deposit | MAIF | 1,067.15 | Claim No. T936712; Insured Gary Francis Stern |
| 7/10/08 | Escrow | check | CJB Therapy | 749.70 | Client or patient not identified. This item could relate to another client. |
| 8/18/08 | Gen. Bus. | deposit | State Farm | 9,000.00 | Claim No. 20–6390–736; Insured Jacks, Tayron |
| 4/2/09 | Gen. Bus. | deposit | MAIF | 5,559.85 | Claim No. T955709; Insured Gary Francis Stern |

In addition to these items, the bank records contain numerous items payable to Mr. Stern from both accounts. Although most of those items are not identified as fees earned, reimbursement for expenses, or any other purpose, the Court infers that those other items are not related to Mr. Stern's individual claim based on a personal injury.

18. As summarized above, C.J.B. rendered invoices totaling $4,632.52 for services provided to Gary F. Stern, and

Mr. Arrington testified that $3,252.37 remained due for those services before C.J.B. reached a compromise with Mr. Stern concerning services rendered to Gary Stern, Denise Brown, Elrea Spurr, and Haile Stern. This is consistent with, though not exactly consistent with, the July 10, 2008 payment of $749.70 made to C.J.B. even assuming that payment was made on behalf of Mr. Stern. Mr. Stern received settlement proceeds for his own claim from which the balance due to C.J.B. should have been paid.

19. With respect to Denise Brown, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 7/7/08 | Gen. Bus. | deposit | MAIF | 2,500.00 | Claim No. T936712; Insured Gary Francis Stern |
| 7/10/08 | Gen. Bus. | check | CJB Therapy | 999.19 | Denise Brown |
| 8/18/08 | Escrow | deposit | State Farm | 10,000.00 | |
| 3/20/09 | Gen. Bus. | check | Denise Brown | 500.00 | |
| 5/2/09 | Escrow | check | Denise Brown | 2,000.00 | |

20. As summarized above, C.J.B. rendered invoices totaling $4,479.91 for services provided to Denise Brown, and Mr. Arrington testified that $480.72 remained due for those services before C.J.B. reached a compromise with Mr. Stern concerning services rendered to Gary Stern, Denise Brown, Elrea Spurr, and Haile Stern. This is consistent with, though not exactly consistent with, the July 10, 2008 payment of $999.19 made to C.J.B. on behalf of Ms. Brown. Mr. Stern received settlement proceeds for Ms. Brown from which the balance due to C.J.B. should have been paid.

21. With respect to Elrea Spurr, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 5/2/08 | Gen. Bus. | check | Elrea Spurr | 400.00 | |
| 5/9/08 | Escrow | check | Elrea Spurr | 300.00 | |

| Date | Account | Type | Payee | Amount | Note |
|---|---|---|---|---|---|
| 5/13/08 | Escrow | check | Elrea Spurr | 350.00 | |
| 5/30/08 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 6/6/06 | Gen. Bus. | check | Elrea Spurr | 350.00 | Dated 2006 but actually 2008 |
| 6/27/08 | Escrow | check | Elrea Spurr | 350.00 | |
| 11/7/08 | Escrow | check | Elrea Spurr | 1,057.00 | |
| 11/12/08 | Gen. Bus. | check | Elrea Spurr | 360.00 | |
| 11/18/08 | Gen. Bus. | check | Elrea Spurr | 500.00 | Memo line: Idrissa Diallo |
| 12/11/08 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 1/9/09 | Gen. Bus. | check | Elrea Spurr | 400.00 | |
| 1/15/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 2/11/09 | Escrow | check | Elrea Spurr | 360.00 | |
| 2/23/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 3/10/09 | Gen. Bus. | check | Elrea Spurr | 355.00 | Memo line: Keith In |
| 3/20/09 | Escrow | check | Creative Financing Solutions | 1,800.00 | Memo line: Elrea Spurr |
| 4/17/09 | Gen. Bus. | check | Elrea Spurr | 400.00 | |
| 6/9/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 8/14/09 | Gen. Bus. | check | Elrea Spurr | 800.00 | |
| 9/9/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 10/13/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 11/11/09 | Escrow | check | Elrea Spurr | 400.00 | |
| 11/24/09 | Escrow | check | Elrea Spurr | 500.00 | |
| 12/2/09 | Escrow | check | Elrea Spurr | 500.00 | |
| 12/9/09 | Gen. Bus. | check | Elrea Spurr | 400.00 | |
| 12/10/09 | Gen. Bus. | check | Elrea Spurr | 350.00 | |
| 12/15/09 | Gen. Bus. | deposit | Jack B. Turner | 150.00 | Check payable to Elrea Spurr |
| 12/18/09 | Escrow | check | Elrea Spurr | 400.00 | |
| 1/27/10 | Escrow | check | Elrea Spurr | 300.00 | |

As stated above, there was evidence that Ms. Spurr is either related to or was involved in the same accident with Mr.

Stern. The pattern of checks to Ms. Spurr suggests that Ms. Spurr works or worked for Mr. Stern in some capacity and that most or all of these items are not related to any personal injury claim she had.

22. As summarized above, C.J.B. rendered invoices totaling $3,361.68 for services provided to Elrea Spurr, and Mr. Arrington testified that $1,052.61 remained due for those services before C.J.B. reached a compromise with Mr. Stern concerning services rendered to Gary Stern, Denise Brown, Elrea Spurr, and Haile Stern. The bank records do not indicate any payment made to C.J.B. on behalf of Ms. Spurr. The bank records also do not indicate that Mr. Stern received settlement proceeds for Ms. Spurr. Thus, there is insufficient evidence to conclude that Mr. Stern received and retained any settlement proceeds for Ms. Spurr from which the balance due to C.J.B. should have been paid.

23. With respect to Haile Stern, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 7/28/08 | Escrow | deposit | MAIF | 1,218.16 | Gary Francis Stern— "insured" |
| 8/18/08 | Escrow | deposit | State Farm | 7,000.00 | |
| 10/27/09 | Escrow | check | Haile Stern | 1,885.60 | Poly Disco Event |
| 12/4/09 | Gen. Bus. | check | Haile Stern | 500.00 | Your Best Event— Poly Disco |
| 4/2/10 | Escrow | deposit | Nationwide | 6,000.00 | 8/30/09 date of loss |
| 4/17/10 | Gen. Bus. | check | Zion Health | 185.00 | Med Tech Haile Stern |
| 5/3/10 | Escrow | deposit | Nationwide | 3,500.00 | 8/30/09 date of loss |

As stated above, there was evidence that Ms. Stern either is related to or was involved in the same accident with Mr. Stern. Based on either the memo lines on the items or the identification of items with a later date of loss, the Court infers that only the first two listed items related to the personal injury claim resulting from injuries in 2008 for which Ms. Stern was treated by C.J.B.

24. As summarized above, C.J.B. rendered invoices totaling $4,568.14 for services provided to Haile Stern, and Mr. Arrington testified that $2,834.47 remained due for those services before C.J.B. reached a compromise with Mr. Stern concerning services rendered to Gary Stern, Denise Brown, Elrea Spurr, and Haile Stern. The bank records do not indicate any payment made to C.J.B. on behalf of Ms. Stern. Mr. Stern received settlement proceeds for Ms. Stern from which the balance due to C.J.B. should have been paid.

25. With respect to Micah Tucker, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 6/30/08 | Gen. Bus. | deposit | Mayor & City Council of Baltimore | 1,222.00 | |
| 8/25/08 | Escrow | check | Micah Tucker | 1,000.00 | |
| 9/11/08 | Gen. Bus. | deposit | MAIF | 207.35 | Insured Johnny Moore Jr. |
| 11/6/08 | Escrow | deposit | UHI Claims Account | 7,000.00 | Full & Final Settlement |
| 5/3/09 | Escrow | check | Micah Tucker | 3,000.00 | |

26. As summarized above, C.J.B. rendered invoices totaling $4,162.83 for services provided to Micah Tucker, and Mr. Arrington testified that $349.52 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Tucker. Mr. Stern received settlement proceeds for Mr. Tucker from which the balance due to C.J.B. should have been paid.

27. With respect to Dorothy Crowder, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 8/13/08 | Escrow | deposit | Gallagher Basset Services Inc. for Veolia Transp. Inc. | 1,460.00 | |
| 8/18/08 | Escrow | check | CJB Therapy | 1,050.00 | |

| Date | Account | Type | From/To | Amount | Note |
|---|---|---|---|---|---|
| 8/27/08 | Gen. Bus. | check | UMMS | 31.21 | Dorothy Crowder 2008–115785 |
| 9/10/08 | Gen. Bus. | check | UMMS | 10.00 | Copy of Bill 1001668727 Dorothy Crowder |
| 9/15/08 | Escrow | deposit | Gallagher Bassett Services Inc. for Veolia Transp. Inc. | 1,040.00 | "Crowder" but same claim number as 8/13/08 item |
| 9/24/08 | Escrow | check | CJB Therapy | 1,040.00 | |
| 11/18/08 | Escrow | deposit | Ohio Casualty | 13,000.00 | BI Settlement |
| 11/24/08 | Escrow | check | Dorothy Crowder | 6,660.46 | |
| 8/19/09 | Escrow | check | Dr. Kenneth Lippman | 265.00 | Dorothy Crowder |

28. As summarized above, C.J.B. rendered invoices totaling $4,310.00 for services provided to Dorothy Crowder, and Mr. Arrington testified that $2,220.00 remains due for those services. This is exactly consistent with the payments of $1,050.00 and $1,040.00 made to C.J.B. on behalf of Ms. Crowder. Mr. Stern received settlement proceeds for Ms. Crowder from which the balance due to C.J.B. should have been paid.

29. With respect to Dennis Hall, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 9/17/08 | Gen. Bus. | deposit | GEICO | 111.01 | PIP 7/13/08–7/14/08 |
| 10/10/08 | Escrow | deposit | GEICO | 7,000.00 | Uninsured motorist coverage, full & final settlement |
| 10/20/08 | Escrow | check | Dennis Hall | 3,836.67 | Auto Accident |
| 11/30/09 | Escrow | deposit | GEICO | 4,200.00 | 8/9/09 accident |
| 12/11/09 | Escrow | check | Dennis Hall | 2,095.00 | |

Based on the identification of the November 30, 2009 item with a later date of loss, the Court infers that only the first three listed items relate to the personal injury claim resulting from injuries in 2008 for which Mr. Hall was treated by C.J.B.

30. As summarized above, C.J.B. rendered invoices totaling $3,713.14 for services provided to Dennis Hall, and Mr. Arrington testified that $1,324.15 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Hall. Mr. Stern received settlement proceeds for Mr. Hall from which the balance due to C.J.B. should have been paid.

31. With respect to Collyn Riggs, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 9/17/08 | Gen. Bus. | deposit | GEICO | 371.50 | PIP 7/13/08 |
| 10/10/08 | Escrow | deposit | GEICO | 8,200.00 | Uninsured motorist coverage, full and final settlement |
| 10/20/08 | Escrow | check | Collyn Riggs | 4,636.67 | Auto Accident |
| 11/30/09 | Escrow | deposit | GEICO | 2,500.00 | As parent of Nicholas Davis, 8/9/09 accident |
| 11/30/09 | Escrow | deposit | GEICO | 4,300.00 | Direct payment to Riggs, 8/9/09 accident |
| 12/11/09 | Escrow | check | Collyn Riggs | 5,683.67 | Memo line: Collyn Riggs—2,686.67; Wesley Henderson III—1,528.33; Nicholas Davis—1,486.67 |

Based on the identification of the November 30, 2009 items with a later date of loss, the Court infers that only the first three listed items relate to the personal injury claim resulting from injuries in 2008 for which Mr. or Ms. Riggs was treated by C.J.B.

32. As summarized above, C.J.B. rendered invoices totaling $3,984.91 for services provided to Collyn Riggs, and Mr. Arrington testified that $1,808.41 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. or Ms. Riggs. Mr. Stern received settlement proceeds for Mr. or Ms. Riggs from which the balance due to C.J.B. should have been paid.

33. With respect to Anthony Hemphill, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 8/15/08 | Escrow | check | UMMS | 28.40 | |
| 11/6/08 | Escrow | deposit | UHI Claims Account | 6,500.00 | Full & final settlement |
| 11/16/08 | Escrow | check | Anthony Hemphill | 1,246.32 | Auto Accident |

34. As summarized above, C.J.B. rendered invoices totaling $2,711.99 for services provided to Anthony Hemphill, and Mr. Arrington testified that that full amount remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Hemphill. Mr. Stern received settlement proceeds for Mr. Hemphill from which the balance due to C.J.B. should have been paid.

35. With respect to Johnny Moore, Jr., the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 11/6/08 | Escrow | deposit | UHI Claims Account | 8,500.00 | Full & final settlement |
| 11/14/08 | Escrow | check | Johnny Moore | 2,971.00 | |
| 11/21/08 | Escrow | check | Associated Medical Clinic | 1,500.00 | Johnny Moore |
| 11/16/09 | Escrow | deposit | MAIF | 2,955.00 | 6/16/09 date of loss |
| 11/19/09 | Escrow | check | Associated Medical Clinic | 600.00 | Johnny Moore—600; includes total of $4200 and other names |
| 12/11/09 | Escrow | check | Johnny Moore | 799.00 | |

Based on the identification of the November 16, 2009 item with a later date of loss, the Court infers that only the first three listed items relate to the personal injury claim resulting from injuries in 2008 for which Mr. Moore was treated by C.J.B.

36. As summarized above, C.J.B. rendered invoices totaling $3,763.45 for services provided to Johnny Moore, Jr., and Mr. Arrington testified that $3,330.65 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Moore. Mr. Stern

received settlement proceeds for Mr. Moore from which the balance due to C.J.B. should have been paid.

37. With respect to Wesley Henderson, Jr., the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 10/10/08 | Escrow | deposit | GEICO | 8,427.00 | Uninsured motorist coverage, full & final settlement |
| 10/20/08 | Escrow | check | Wesley Henderson | 4,788.00 | Auto Accident |
| 11/30/09 | Escrow | deposit | GEICO | 4,000.00 | 8/9/09 accident |
| 12/11/09 | Escrow | check | Wesley Henderson Jr. | 1,991.67 | |

Based on the identification of the November 30, 2009 item with a later date of loss, the Court infers that only the first two listed items relate to the personal injury claim resulting from injuries in 2008 for which Mr. Henderson was treated by C.J.B.

38. As summarized above, C.J.B. rendered invoices totaling $3,891.37 for services provided to Wesley Henderson, Jr., and Mr. Arrington testified that $1,391.37 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Henderson. Mr. Stern received settlement proceeds for Mr. Henderson from which the balance due to C.J.B. should have been paid.

39. With respect to Wesley Henderson III, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 10/10/08 | Escrow | deposit | GEICO | 7,200.00 | Uninsured motorist coverage, full & final settlement |
| 10/20/08 | Escrow | check | Wesley Henderson III | 3,970.00 | Auto Accident |
| 11/30/09 | Escrow | deposit | GEICO | 4,200.00 | 8/9/09 accident |

Based on the identification of the November 30, 2009 item with a later date of loss, the Court infers that only the first two listed items relate to the personal injury claim resulting from injuries in 2008 for which Mr. Henderson was treated by C.J.B.

40. As summarized above, C.J.B. rendered invoices totaling $3,904.60 for services provided to Wesley Henderson III, and Mr. Arrington testified that $1,404.60 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Henderson. Mr. Stern received settlement proceeds for Mr. Henderson from which the balance due to C.J.B. should have been paid.

41. With respect to Clifford Johnson, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 10/2/08 | Escrow | deposit | GEICO | 7,375.00 | Bodily injury coverage, full & final settlement |
| 10/16/08 | Escrow | check | Clifford Johnson | 2,356.67 | Auto Accident |

42. As summarized above, C.J.B. rendered invoices totaling $4,106.37 for services provided to Clifford Johnson, and Mr. Arrington testified that that full amount remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Johnson. Mr. Stern received settlement proceeds for Mr. Johnson from which the balance due to C.J.B. should have been paid.

43. With respect to Antionette Ellis, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 9/2/08 | Escrow | check | Chart One | 100.00 | Memo line also includes other names; amounts not specified |
| 9/18/08 | Escrow | check | Enterprise Car Rental | 169.00 | |
| 9/22/09 | Gen. Bus. | deposit | ELCO administrative services | 3,880.47 | On behalf of client Antionette Ellis |

| 9/24/09 | Escrow | check | Antionette Ellis | 2,177.00 | Court Judgment– Auto |

44. As summarized above, C.J.B. rendered invoices totaling $2,555.53 for services provided to Antionette Ellis, and Mr. Arrington testified that that full amount remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Ms. Ellis. Mr. Stern received settlement or judgment proceeds for Ms. Ellis from which the balance due to C.J.B. should have been paid. The Court also notes that Mr. Stern deposited some of the settlement or judgment proceeds in his general business account rather than his escrow account.

45. The bank records do not contain any items related specifically to Tiffany Gordon.

46. With respect to David Blake, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 10/31/08 | Gen. Bus. | check | David Blake | 200.00 | Advance |
| 1/13/09 | Escrow | deposit | GEICO | 5,000.00 | Bodily injury coverage, full & final settlement |

47. As summarized above, C.J.B. rendered invoices totaling $4,357.83 for services provided to David Blake, and Mr. Arrington testified that $1,857.53 remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Blake. Mr. Stern received settlement proceeds for Mr. Blake from which the balance due to C.J.B. should have been paid.

48. With respect to Bryan Moore, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|---|---|---|---|---|---|
| 4/2/09 | Escrow | deposit | Allstate | 280.00 | Treatment from 1/26/09 under PIP |

49. As summarized above, C.J.B. rendered invoices totaling $4,676.99 for services provided to Bryan Moore, and Mr.

Arrington testified that that full amount remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Moore. The bank records also do not indicate that Mr. Stern received settlement proceeds for Mr. Moore. Thus, there is insufficient evidence to conclude that Mr. Stern received and retained any settlement proceeds for Mr. Moore from which the balance due to C.J.B. should have been paid.

50. With respect to Darion Johnson, the bank records show the following transactions:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 2/17/09 | Escrow | deposit | Encompass Ins. | 7,500.00 | Claim for Bodily Injury |
| 5/29/09 | Escrow | check | Darion Johnson | 991.00 | Replace Check 4019 |

51. As summarized above, C.J.B. rendered invoices totaling $3,696.37 for services provided to Darion Johnson, and Mr. Arrington testified that that full amount remains due for those services. The bank records do not indicate any payment made to C.J.B. on behalf of Mr. Johnson. Mr. Stern received settlement proceeds for Mr. Johnson from which the balance due to C.J.B. should have been paid.

52. The bank records also show the following two payments to C.J.B. with no specification of a client or patient:

| Date | Account | Type | From (deposit) or To (check) | Amount | Note |
|------|---------|------|------------------------------|--------|------|
| 8/26/08 | Escrow | check | CJB Therapy | 1,200.00 | No client specified |
| 1/29/09 | Escrow | check | CJB Therapy | 3,000.00 | No client specified |

53. The bank records show the following month-ending balances in Mr. Stern's escrow account, the account ending in 6211, from May 2008 to May 2010:

| Month | Statement Ending Balance | Month | Statement Ending Balance | Month | Statement Ending Balance |
|-------|--------------------------|-------|--------------------------|-------|--------------------------|
| | | Jan.2009 | $ 966.63 | Jan.2010 | $34,578.26 |
| | | Feb.2009 | $ 7,467.96 | Feb.2010 | $26,882.89 |

| | | Mar.2009 | $ 6,618.92 | Mar.2010 | $ 3,731.04 |
|---|---|---|---|---|---|
| | | Apr.2009 | $ 18,531.00 | Apr.2010 | $ 8,187.10 |
| May 2008 | $6,676.50 | May 2009 | $168,988.96 | May 2010 | $ 3,057.10 |
| June 2008 | $6,614.05 | June 2009 | $ 30,287.00 | | |
| July 2008 | $ 676.49 | July 2009 | $ 6,932.00 | | |
| Aug.2008 | $7,868.59 | Aug.2009 | $ 38,458.00 | | |
| Sept.2008 | $3,830.76 | Sept.2009 | $ 20,824.00 | | |
| Oct.2008 | $3,968.78 | Oct.2009 | $ 22,000.00 | | |
| Nov.2008 | $5,217.04 | Nov.2009 | $ 30,705.86 | | |
| Dec.2008 | $5,146.04 | Dec.2009 | $ 18,449.73 | | |

\* \* \*

68. With respect to sixteen of the nineteen clients included in the Commission's first claim, the Commission has proved that Mr. Stern received the proceeds of settlements on behalf of those clients; that those clients received services from C.J.B.; that C.J.B. was to receive payment for those services from the settlement proceeds; and that Mr. Stern failed to pay in full the amounts due to C.J.B. The clients for whom this was the case are Sean P. Turner, Gary F. Stern, Denise Brown, Haile Stern, Micah Tucker, Dorothy Crowder, Dennis Hall, Collyn Riggs, Anthony Hemphill, Johnny Moore, Jr., Wesley Henderson, Jr., Wesley Henderson III, Clifford Johnson, Antionette Ellis, David Blake, and Darion Johnson.

69. With respect to the remaining three clients included in the Commission's first claim, the Commission has failed to prove the allegations by clear and convincing proof, primarily because there is no clear evidence that Mr. Stern received the proceeds of settlements on behalf of those clients. The clients for whom this was the case are Elrea Spurr, Tiffany Gordon, and Bryan Moore.

Judge Fletcher–Hill then turned to Stern's representation of Sean P. Turner in connection with a personal injury claim arising from an automobile accident in the following findings:

54. Sean P. Turner retained Mr. Stern to represent him in connection with a claim for personal injuries Mr. Turner sustained in a May 2008 automobile accident. Mr. Stern met with Mr. Turner at Mr. Turner's home approximately one week after the accident.

55. Mr. Turner injured his knee, back, and chest in the accident. He received treatment from C.J.B. from May to August 2008.

56. Mr. Turner had $2,500 in personal injury protection coverage with USAA. He understood that any PIP payments were being made directly to Mr. Stern. Mr. Turner never received any payment of PIP benefits either directly from USAA or from Mr. Stern.

57. In about February 2009, Mr. Turner received a letter from a collection agency concerning a medical bill for $472.31 related to treatment following the 2008 accident. The bill was from a provider other than C.J.B. Mr. Turner ultimately paid this medical bill.

58. Because of the outstanding medical bill, Mr. Turner began investigating the status of his claim. He tried to contact Mr. Stern, but Mr. Stern did not return his telephone calls. Mr. Turner then contacted Travelers Insurance, which insured the other driver in the accident. Mr. Turner was advised that the claim had been settled for $11,000.

Judge Fletcher–Hill then found that Stern had settled Mr. Turner's claim without his authorization or consent:

59. Mr. Turner never authorized Mr. Stern to make a settlement demand in his case in any specific amount. He never authorized Mr. Stern to settle his claim for $11,000. Mr. Turner was not satisfied with a settlement of $11,000.

60. In April 2009, Travelers provided to Mr. Turner copies of a "Release in Full," purportedly signed by Mr. Turner on September 18, 2008, and Travelers' settlement check for $11,000 dated September 19, 2008 and purportedly endorsed by Mr. Turner.

61. Mr. Turner did not sign either the "Release in Full" or the endorsement on the Travelers settlement check.

62. As stated above, the Travelers settlement check was negotiated and the proceeds were deposited into Mr. Stern's escrow account on September 23, 2008.

63. Mr. Stern did not pay to Mr. Turner any of the proceeds of the settlement from September 2008 to April 2009.

64. After learning that his claim had been settled, Mr. Turner retained another attorney, Joel I. Hoffman, Esquire. Mr. Hoffman succeeded in having the claim reopened by Travelers Insurance. Mr. Turner ultimately settled the claim to his satisfaction for $21,000.

65. In September 2009, Mr. Stern tendered to Mr. Hoffman $11,037.60–the $11,000.00 settlement plus $37.60 received for an x-ray bill. Mr. Stern also provided a copy of his check paying C.J.B. $1,901.00 for therapy expenses. In a letter admitted as Petitioner's Exhibit 10, Mr. Stern also provided his explanation of his communications with Mr. Turner and his settlement of the claim.

66. At some point after Mr. Turner obtained the settlement documents from Travelers, he had at least one telephone conversation with Mr. Stern. Mr. Stern made statements to Mr. Turner to the effect of: "Oh, I had your money"; "My secretary signed the documents"; and "I sign for my clients."

67. Mr. Turner did not accept Mr. Stern's tender of the settlement proceeds. As stated above, the bank records show that Mr. Stern refunded the $11,000 settlement to Travelers on December 1, 2009.

Judge Fletcher–Hill then determined that Stern's failure to remit payment to C.J.B. on behalf of sixteen of the nineteen clients constituted violations of Rule 1.15(d) and Rule 8.4(d), and that, with respect to at least one client, Stern also violated Rule 16–609(c) and Section 10–306 of the Business Occupations and Professions Article by failing to maintain funds owed C.J.B. in his attorney trust account. Finally, Judge Fletcher–

Hill found that with respect to one client, Antionette Ellis, Stern also violated Rule 16–604 by depositing a settlement check received on her behalf in his general business account, rather than his attorney trust account:

70. With respect to the sixteen clients identified in paragraph 68, Mr. Stern violated Rule 1.15(d) of the Maryland Rules of Professional Conduct by failing promptly to deliver to C.J.B., a third person, those funds from the settlement proceeds that C.J.B. was entitled to receive based on the services C.J.B. rendered to Mr. Stern's clients. *See Attorney Grievance Commission v. Roberts,* 394 Md. 137, 163–64 [904 A.2d 557] (2006) (delay in delivering settlement funds to client and medical providers violates Rule 1.15(b), now Rule 1.15(d)); *Attorney Grievance Commission v. Stolarz,* 379 Md. 387, 400–01 [842 A.2d 42] (2004) (even inadvertent failure to pay third party from settlement funds violates Rule 1.15(b), now Rule 1.15(d)). With respect to Mr. Turner, Mr. Stern's violation of Rule 1.15(d) is one of delay only because he ultimately refunded the settlement proceeds to Travelers. With respect to the other fifteen identified clients, Mr. Stern has never paid the amounts due to C.J.B. and he has retained or otherwise disposed of the settlement proceeds from which those amounts should have been paid.

71. As noted above, the Commission withdrew its allegation of a violation of Rule 8.1(b) of the Maryland Rules of Professional Conduct as part of its first claim.

72. With respect to the sixteen clients identified in paragraph 68, Mr. Stern violated Rule 8.4(d) of the Maryland Rules of Professional Conduct because his failure promptly to deliver to C.J.B. the funds from the settlement proceeds that C.J.B. was entitled to receive based on the services C.J.B. rendered to Mr. Stern's clients is conduct that is prejudicial to the administration of justice.

73. With respect to the fifteen of the sixteen clients identified in paragraph 68, excluding Antionette Ellis, the Commission has failed to prove a violation of Maryland Rule 16–604 because the Commission has not proved by clear and convincing evidence that Mr. Stern failed to deposit into his

attorney trust account settlement funds that should have been deposited there. With respect to Antoinette Ellis, the Commission has proved by clear and convincing evidence that Mr. Stern violated Maryland Rule 16–604 by depositing one settlement check received on behalf of Ms. Ellis in his general business account rather than his attorney trust account.

74. With respect to at least one of the sixteen clients identified in paragraph 68, Mr. Stern violated Maryland Rule 16–609(c). The total amount due C.J.B. for fifteen of those clients, excluding Sean P. Turner, is $29,756.49. Mr. Turner is excluded from this sum because, although Mr. Stern did not pay C.J.B. all that was due it on behalf of Mr. Turner, Mr. Stern ultimately refunded all of the Turner settlement proceeds to Travelers. If Mr. Stern did not withdraw any of these funds from his escrow account to pay them to the client or for any other purpose, then this amount would have to have remained in Mr. Stern's escrow account from the time when it had accumulated to the present. The balances in the escrow account, however, show that the total amount in the escrow account has dropped below $29,756.49 in at least eight of the eleven months from July 2009 to May 2010, even considering only the month-end balances in that account. Thus, for at least one of these clients, Mr. Stern "create[d] a negative balance [in his attorney trust account] with regard to an individual client matter," in violation of Maryland Rule 16–609(c).

75. With respect to at least one of the sixteen clients identified in paragraph 68, Mr. Stern violated Maryland Code, § 10–306 of the Business Occupations and Professions Article. As found in the immediately preceding paragraph, Mr. Stern failed to maintain in his attorney trust account the balance necessary to pay in full all of the amounts due to C.J.B. on behalf of the fifteen clients, excluding Mr. Turner. Funds from a settlement due to be paid to a third party are "trust money" within the meaning of § 10–306 of the Business Occupations and Professions Article, and the failure to hold those funds for the third party amounts to

using them for another purpose in violation of § 10–306. *Attorney Grievance Commission v. Cherry–Mahoi,* 388 Md. 124, 157 [879 A.2d 58] (2005).

Judge Fletcher–Hill further determined that Stern violated Rule 1.2(a), Rule 1.15(d), Rules 8.4(c) and (d), Rule 16–609(c), as well as Section 10–306 of the Business Occupations and Professions Article because of his settlement of Mr. Turner's case without his consent, but that Stern did not violate Rule 1.16(d) or Rule 16–604:

76. In his representation of Sean P. Turner, Mr. Stern violated Rule 1.2(a) of the Maryland Rules of Professional Conduct. Mr. Stern made a settlement demand and then purported to conclude a settlement on behalf of Mr. Turner, all without consulting with Mr. Turner. Mr. Stern failed to "consult with the client as to the means by which [the client's objectives] are to be pursued." By failing even to give Mr. Turner the opportunity to decide whether to settle his claim, Mr. Stern failed to "abide by a client's decision whether to settle a matter." This was a violation of Rule 1.2(a) of the most fundamental order. *See Attorney Grievance Commission v. Thaxton,* 415 Md. 341, 362 [1 A.3d 470] (2010) (similar conduct recognized as violation of Rule 1.2(a) in reciprocal discipline case); *Attorney Grievance Commission v. Kapoor,* 391 Md. 505, 530–31 [894 A.2d 502] (2006) (same in direct discipline case).

77. In his letter admitted as Petitioner's Exhibit 10, Mr. Stern tried to explain his actions in settling Mr. Turner's claim by writing that he communicated the settlement offer to Mr. Turner and then assumed it was acceptable when Mr. Turner failed to respond to his telephone calls. Even if the Court were to consider this explanation, despite Mr. Stern's absence from the hearing, it is factually inconsistent with Mr. Turner's credible testimony that it was Mr. Stern, not Mr. Turner, who failed to return telephone calls. Moreover, even if Mr. Stern's statements were believable, his conduct still would violate Rule 1.2(a) because, by Mr. Stern's own admission, Mr. Turner never gave him specific parameters within which to settle the claim.

78. Although not alleged by the Commission, Mr. Stern also violated Rule 1.4(a) of the Maryland Rules of Professional Conduct by failing to communicate with Mr. Turner throughout the representation. *See Thaxton,* 415 Md. at 362 [1 A.3d 470].

79. As already concluded above, Mr. Stern violated Rule 1.15(d) of the Maryland Rules of Professional Conduct in his representation of Mr. Turner by failing to deliver promptly to C.J.B. amounts that were due to C.J.B. after receipt of the settlement funds from Travelers.

80. Mr. Stern also violated Rule 1.15(d) of the Maryland Rules of Professional Conduct by failing to pay to Mr. Turner the proceeds of the settlement that were due to Mr. Turner promptly after paying any third parties entitled to be paid from the settlement proceeds. *Roberts,* 394 Md. at 163–64 [904 A.2d 557]. As found above, Mr. Stern received the $11,000 settlement amount and deposited it into his escrow account on September 23, 2008. Mr. Stern made a payment to C.J.B. on September 24, 2008, but that payment was actually the payment of PIP proceeds received from USAA on September 15, 2008. Mr. Stern did not even inform Mr. Turner of receipt of the $11,000 settlement until Mr. Turner made inquiries to him after learning of the settlement independently at least seven months later. Mr. Stern's professional obligation was to inform Mr. Turner of the settlement promptly and to disburse the funds as appropriate.

81. Because of the incompleteness of the records introduced into evidence, the Court is unable to determine whether Mr. Stern took his own fee from the proceeds of the purported Turner settlement or otherwise improperly disbursed any of the settlement funds.

82. The Commission has failed to prove a violation of Rule 1.16(d) of the Maryland Rules of Professional Conduct in Mr. Stern's representation of Mr. Turner because the Commission has not proved all the circumstances in which Mr. Turner terminated Mr. Stern's representation of him or what demands, if any, Mr. Turner made of Mr. Stern to

return papers relating to the representation. Fortunately, by his own efforts, the efforts of new counsel, and the apparent cooperation of Travelers, Mr. Turner was able to re-open his claim and achieve a satisfactory settlement with Travelers.

83. As noted above, the Commission withdrew its allegation of a violation of Rule 8.1(b) of the Maryland Rules of Professional Conduct as part of its second claim.

84. In his representation of Mr. Turner, Mr. Stern violated Rule 8.4(c) and (d) of the Maryland Rules of Professional Conduct. Mr. Stern tendered to Travelers the "Release in Full" which purported to be signed by Mr. Turner when Mr. Stern knew both that it was not in fact signed by Mr. Turner and that Mr. Turner had not even authorized the settlement and release. This was both "conduct involving dishonesty, fraud, deceit or misrepresentation" and "conduct that is prejudicial to the administration of justice." It was harmful to Mr. Turner in purporting to surrender his claim for an amount he did not authorize and harmful to Travelers in purporting to resolve a matter that was not in fact resolved.

85. The Commission has failed to prove a violation of Maryland Rule 16–604 in Mr. Stern's representation of Mr. Turner because the Commission has not proved by clear and convincing evidence that Mr. Stern failed to deposit the Turner settlement proceeds into his attorney trust fund.

86. In his representation of Mr. Turner, Mr. Stern violated Maryland Rule 16–609(c). If Mr. Stern had never withdrawn any of the Turner settlement funds from his escrow account for any purpose, then he would have maintained a balance of at least $11,000 in that account from receipt of the funds in September 2008 until he refunded them to Travelers on December 1, 2009. The balances in the escrow account, however, show that the total amount in the escrow account dropped below $11,000 in at least six of the months during that period, even considering only the month-end balances in that account. Indeed, the balance in Mr. Stern's escrow account at the end of September 2008, the month in

which he first received the settlement proceeds, was only $3,830.76. Thus, on multiple occasions Mr. Stern "create[d] a negative balance [in his attorney trust account] with regard to an individual client matter," in violation of Maryland Rule 16–609(c).

87. Mr. Stern violated Maryland Code, § 10–306 of the Business Occupations and Professions Article in his representation of Mr. Turner. As found in the immediately preceding paragraph, Mr. Stern failed to maintain in his attorney trust account the balance necessary to pay in full all of the amounts due to Mr. Turner and C.J.B. from the settlement funds. Funds from a settlement due to be paid to a client or third party are "trust money" within the meaning of § 10–306 of the Business Occupations and Professions Article, and the failure to hold those funds for the third party amounts to using them for another purpose in violation of § 10–306. *Cherry–Mahoi,* 388 Md. at 157 [879 A.2d 58].

**Standard of Review**

 "This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Nwadike,* 416 Md. 180, 192, 6 A.3d 287, 294 (2010), quoting *Attorney Grievance v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009). In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous. *Attorney Grievance v. Palmer,* 417 Md. 185, 205, 9 A.3d 37, 49 (2010). If no exceptions are filed, we may treat the hearing judge's findings of fact as established for the purpose of determining the appropriate sanction. Rule 16–759(b)(2)(A).[11] We review the hearing judge's conclusions of law de novo.

---

**11.** Rule 16–759(b)(2)(A) states:
 (2) Findings of Fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

Rule 16–579(b)(1);[12] *Attorney Grievance v. Jarosinski,* 411 Md. 432, 448–49, 983 A.2d 477, 487 (2009).

## Discussion

 Bar Counsel has not filed any exceptions to the hearing judge's findings of fact or conclusions of law. Stern also did not file any exceptions nor did he appear at oral argument before this Court. As a result, we accept Judge Fletcher–Hill's findings of fact as established for the purpose of determining the proper sanction. Rule 16–759(b)(2)(A). Based upon our de novo review of the record, we agree that Stern violated Rule 1.15(d) and Rule 8.4(d) regarding his failure to remit payment to C.J.B. on behalf of sixteen clients, although he had received settlement proceeds on behalf of those clients, and that with respect to at least one client, Stern also violated Rule 16–609(c) and Section 10–306 of the Business Occupations and Professions Article by failing to maintain funds due C.J.B. in his escrow account. We also agree with the hearing judge that Stern violated Rule 16–604 with respect to Antionette Ellis by depositing a settlement check received on her behalf in his general business account, rather than his attorney trust account. Finally, based upon our de novo review of the record, we agree that Stern violated Rule 1.2(a), Rule 1.15(d), Rules 8.4(c) and (d), Rule 16–609(c), and Section 10–306 of the Business Occupations and Professions Article, but not Rule 1.16(d) or Rule 16–604, in connection with his settlement of Mr. Turner's claim without Mr. Turner's knowledge or consent.[13]

---

**12.** Rule 16–759(b)(1) provides:
(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**13.** It appears that the hearing judge did not mention Rules 1.15(a), (b), (c), and (e), Rules 8.4(b) and (c), and Rules 16–609(a) and (b) with respect to Stern's misappropriation of funds on behalf of the sixteen clients, nor did the hearing judge mention Rules 1.15(a), (b), (c), and (e), Rule 8.4(b), and Rules 16–609(a) and (b) in connection with Stern's settlement of Mr. Turner's claim without his client's knowledge or consent. These omissions do not affect our analysis, however.

Bar Counsel recommends disbarment in the present case because Stern's misconduct "was a willful violation of the law and no mitigation of his conduct has been established."

■ In the present case, Stern misappropriated payments belonging to C.J.B. for services rendered on behalf of his clients, failed to keep the funds due C.J.B. in his escrow account, and also deposited the settlement check of Antoinette Ellis in his general account rather than in trust, all in violation of Rules 1.15(d), 8.4(d), 16–604, 16–609(c), and Section 10–306 of the Business Occupations and Professions Article. In addition, Stern settled Sean Turner's claim without Mr. Turner's knowledge or permission, failed to timely pay Mr. Turner, submitted a release to an insurer which bore a forged signature, and failed to maintain funds from Mr. Turner's case in trust, all in violation of Rules 1.2(a), 1.15(d), 8.4(c) and (d), 16–609(c), and Section 10–306 of the Business Occupations and Professions Article.

■ It has long been settled that "an attorney's misappropriation of funds entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct." *Attorney Grievance v. Palmer*, 417 Md. 185, 9 A.3d 37 (2010), quoting, *Attorney Grievance v. Thomas*, 409 Md. 121, 175, 973 A.2d 185, 218 (2009). The default sanction for ethical violations involving intentional "misappropriation, or other intentional dishonest conduct," is disbarment. *Attorney Grievance v. West*, 411 Md. 3, 27–28, 981 A.2d 621, 635 (2009). Here, Stern's personal injury clients signed authorizations such that C.J.B. would be paid for physical therapy services from any recoveries in their cases. Rather than remit payment to C.J.B., however, Stern misappropriated those funds in connection with sixteen of nineteen clients.

We have also imposed disbarment when an attorney has settled a client's claim without the client's knowledge or consent, engaging in a pattern of deception and self-dealing. In *Attorney Grievance v. Fox*, 417 Md. 504, 11 A.3d 762 (2010), a client retained Fox because he had been injured in an

automobile accident. Fox failed to consult with the client regarding a settlement, settled his client's claim without notifying the client, and the client did not learn of the settlement until he hired new counsel after being sued by a medical provider, all in violation of Rule 1.2(a), as well as Rule 8.4(d). We disbarred Fox, reasoning that his failure to discuss the settlement or notify his client for a period of six years amounted to "abandonment," such that he was unfit to practice law in Maryland. *Id.* at 544, 11 A.3d at 785.

Similarly, in *Attorney Grievance v. Kapoor,* 391 Md. 505, 894 A.2d 502 (2006), we recognized disbarment was necessary for the protection of the public when an attorney settled his client's personal injury claim without his authorization or knowledge and deposited the check in a personal account in violation of Rule 1.2(a), Rules 1.15(a), (b), and (c), and Rules 8.4(c) and (d). In imposing the gravest sanction of disbarment, we emphasized that Kapoor's misconduct of forging a client's signature on a settlement check was dishonest, deceitful, and prejudicial to the administration of justice.

Stern's conduct in the present case, misappropriating tens of thousands of dollars in client funds and settling a client's claim without that client's knowledge or consent, warrants the gravest sanction, disbarment, for the protection of the public.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST GARY FRANCIS STERN.**